PONCE FEDERAL SAVINGS AND LOAN ASSOCIATION OF PUERTO RICO, demandante y recurrente, *v.* ENRIQUE GÓMEZ MONAGAS y su esposa, OTILIA FAS e ISLA DEVELOPMENT INVESTMENT & MANAGEMENT CORPORATION, demandados y recurridos.

*Número:* R-78-246    *Resuelto:* 28 de marzo de 1979

*Raúl Matos,* abogado de la recurrente; *Biaggi & Landrón,* abogados de los recurridos.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

El presente pleito se originó mediante demanda sobre ejecución de hipoteca por la vía ordinaria. Ponce Federal Savings and Loan Association la instó contra los esposos Enrique Gómez Monagas y Otilia Fas y contra la corporación Isla Development Investment and Management. El precio de tasación que había de regir en la primera subasta fue pactado por las partes en la suma de $25,000.00. El tribunal condenó a los esposos demandados y a Isla al pago de la suma reclamada. Les ordenó satisfacer a la demandante las siguientes cantidades: $24,482.13 de principal; $5,804.00 por concepto de intereses hasta el 27 de marzo de 1978 y $3,800.00 de honorarios de abogado acordadas en la escritura de hipoteca.

En la sentencia dispuso que:

". . . para satisfacer la presente sentencia una vez firme la misma, se procederá en primer lugar a vender en pública subasta el apartamiento hipotecado objeto de la demanda, sirviendo como precio mínimo el importe total que se adeuda sobre esta obligación para la fecha de la subasta, la cual deberá llevarse a cabo en la forma dispuesta por ley, aclarándose además, que de hacer el banco demandante alguna oferta en la subasta, la misma deberá ser por una suma no menor del importe total del crédito que se ejecuta." [1]

La recurrente sostiene que tratándose de un procedimiento de ejecución por la vía ordinaria no rige el precio mínimo de $25,000 pactado, por ser dicho precio aplicable ex-

---

[1] El alcance de este extremo de la sentencia queda explicado así en un escolio a la misma: "Constituirá un enriquecimiento injusto el permitirle al banco que ofrezca menos de su crédito por el apartamento, cuando el mismo se vendió hace solo cuatro años a los deudores originales por $35,000.00 sin haberse establecido que hubiese desmerecido de valor, para permitirle al banco adquirir el apartamento por un precio mucho menor y ejecutar además otros bienes de los deudores originales."

clusivamente a los casos de ejecución por la vía sumaria. Alega, además, que el tribunal de instancia carecía de poder para fijar como precio mínimo el importe total de la obligación a la fecha de la subasta.

# I

Discutiremos primeramente la contención de la recurrente en el sentido de que el precio mínimo pactado por las partes en la escritura de hipoteca rige solamente en los casos de ejecución por la vía sumaria. Para ello cita la recurrente nuestro pronunciamiento en *Font* v. *Registrador*, 52 D.P.R. 850 (1938), a la pág. 855 donde expresamos que "el restablecimiento de dicho artículo [Art. 127 de la Ley Hipotecaria] sólo puede afectar y afecta al procedimiento especial sumarísimo regulado por la propia Ley Hipotecaria. El ordinario en ejecución de hipoteca sigue igual, debiendo satisfacerse la sentencia por los trámites de la ley de 1905."

Para analizar adecuadamente el problema que presenta el caso de autos resulta necesario enmarcarlo en su contexto histórico.

Una de las reformas fundamentales realizadas por la Ley Hipotecaria para las Provincias de Ultramar, que comenzó a regir en Puerto Rico el 5 de octubre de 1893, fue la adopción del procedimiento ejecutivo sumario para hacer efectivos los créditos hipotecarios. Uno de los elementos básicos del procedimiento, el requisito de previa tasación de la finca por las partes, quedó establecido en el Art. 127 de la Ley. (²)

El procedimiento ejecutivo sumario vino a suplementar, no a sustituir, al procedimiento de ejecución de hipoteca por la vía ordinaria. Este último se regía por los Arts. 1483 y

---

(²) Disponía dicho artículo:

"En la escritura de hipoteca se hará constar el precio en que tasan la finca los contratantes, para que sirva de tipo a la única subasta que se debe celebrar en el caso de que, vencido el plazo del préstamo, no conste en el Registro de la Propiedad el pago de dicho préstamo."

1494 de la Ley de Enjuiciamiento Civil española. Por la vía ordinaria no era necesaria ni pertinente la previa tasación de la finca por las partes en la escritura de hipoteca. La subasta, sin embargo, estaba sujeta a un tipo mínimo obtenido de otra forma: mediante el avalúo pericial de los bienes a ser subastados. Tenemos, por lo tanto, que antes del cambio de soberanía toda subasta de bienes inmuebles resultante de una acción de ejecución de hipoteca estaba sujeta a un tipo mínimo, cuya frente dependía del método de ejecución utilizado por el acreedor hipotecario.

Después del cambio de soberanía este Tribunal interpretó en 1906 que la Ley Relativa a las Sentencias y la Manera de Satisfacerlas, de 9 de marzo de 1905, 32 L.P.R.A. sec. 1141 y ss., derogó el Art. 127 de la Ley Hipotecaria, *supra*, por lo que el procedimiento sumario sólo estaba vigente desde la presentación del escrito inicial hasta la consumación del requerimiento de pago. *Giménez* v. *Brenes*, 10 D.P.R. 128 (1906). A raíz de esta interpretación se descontinuó la previa tasación de los bienes en las escrituras de hipoteca y las subastas surgidas de los procedimientos sumarios se celebraron sin tipo mínimo. *Bolívar* v. *Registrador*, 13 D.P.R. 375 (1907); *Cintrón* v. *Banco Territorial*, 15 D.P.R. 507 (1909); *Porto Rico Leaf Tobacco Co.* v. *Registrador*, 23 D.P.R. 507 (1916). Véase Toledo Alamo, *De la Previa Tasación en la Hipoteca*, 2 Rev. Jur. U.P.R. 1 (1932).

La ausencia de justiprecio como tipo mínimo para las subastas dio lugar a numerosos abusos, lográndose las adjudicaciones por cantidades irrisorias. Como consignamos en *Arroyo* v. *Registrador*, 86 D.P.R. 362, 368-69 (1962), "[d]ebido a los numerosos abusos a que dio lugar la ausencia de justiprecio, con la consiguiente adjudicación o remate por cantidades irrisorias, la Asamblea Legislativa, mediante la Ley Núm. 69 de 2 de mayo de 1931 (Leyes, pág. 433) . . .",

restableció el Art. 127 de la Ley Hipotecaria, en una nueva versión. ([3])

En *Font* v. *Registrador*, como antes apuntamos, resolvimos que la previa tasación de la finca sólo tenía pertinencia en cuanto al procedimiento ejecutivo sumario, mas no en cuanto al ordinario, el cual se regiría por la ley de 1905. Justificamos la decisión expresando que "en el procedimiento sumarísimo no tiene [el] deudor oportunidad de defenderse. Se le requiere y si no paga dentro del término de ley se procede sin más trámite a la venta. Pero si el acreedor no recurre a ese procedimiento especial y va a un *juicio*, en el juicio tiene el deudor la oportunidad de alegar cuanto a su derecho conduzca." *Id.*, a las págs. 855–56. (Énfasis en el original.)

Este razonamiento no sólo no guarda relación alguna con el problema del tipo que debe regir en la primera subasta para garantía del deudor sino que es contrario al propósito que inspiró al legislador a restablecer el requisito de previa tasación. El remedio contra los "numerosos abusos" y "remate[s] por cantidades irrisorias" a que aludimos en *Arroyo* v. *Registrador*, supra, a las págs. 368–69, no podía consistir en fijar un tipo mínimo para solo uno de los procedimientos ejecutivos sino para ambos. Sólo a través de la fijación de un tipo mínimo para la subasta, independientemente de la vía ejecutiva adoptada, podía corregirse la situación. Si se acu-

---

([3]) Dispone actualmente este artículo:

"En la escritura de hipoteca se hará constar el precio en que tasan la finca los contratantes, para que sirva de tipo a la primera subasta que se debe celebrar, en el caso de que, vencido el plazo del préstamo, no conste en el registro de la propiedad el pago de dicho préstamo.

"Si no produjere remate ni adjudicación la primera subasta, en la segunda que se celebrare servirán de tipo las dos terceras partes del precio en que hayan tasado la finca los contratantes, pero cuando esas dos terceras partes no excedieren de la cuantía de las responsabilidades preferentes, esa cuantía señalará el mínimo de las posturas admisibles.

"Si tampoco hubiere remate ni adjudicación en la segunda subasta, regirá como tipo en las otras subastas que pudieran celebrarse el valor total a que ascienden los créditos preferentes." 30 L.P.R.A. sec. 223.

diere a un juicio ordinario según lo expresado en *Font,* supra, lo que habría de discutirse no es el valor del inmueble hipotecado sino los derechos del deudor frente al acreedor hipotecario. La posibilidad de abusos y remates por cantidades irrisorias permanece inalterada y no ha de variar por mucha oportunidad de defenderse que se le brinde al deudor hipotecario en el procedimiento ordinario, si no existe un tipo para regir en la primera subasta a celebrarse en ejecución de la sentencia que se dicte en dicho pleito.

■ Limitar el requisito de previa tasación al procedimiento sumario era razonable y coherente mientras regía en nuestro país la Ley de Enjuiciamiento Civil española, con su procedimiento de avalúo pericial del bien a ser subastado. El cambio de sistema de derecho alteró esta situación. Mal podía nuestro legislador corregir la injusticia que le preocupaba en 1931 a base del esquema cuya vigencia este Tribunal reconoció en *Font.* El fiel cumplimiento del mandato legislativo requiere que la previa tasación acordada por las partes en la escritura de hipoteca debe servir de tipo mínimo en toda subasta de un inmueble que se celebre como consecuencia de la ejecución de un crédito hipotecario, independientemente de la vía que para ello elija el acreedor, (⁴) y así lo resolvemos. Todo pronunciamiento contrario en *Font* v. *Registrador,* supra, queda revocado.

Parece pertinente consignar que Roca Sastre es del criterio que la previa tasación de los bienes hipotecados consig-

---

(⁴) Este también es el esquema que contienen los más recientes proyectos de ley para un nuevo Código Hipotecario. Véase Art. 328 del Proyecto de Código Hipotecario de 1967, P. de la C. 782 de 1967; Art. 175 del Proyecto Sustitutivo del P. de la C. 564, de 5 de marzo de 1974; Art. 179 del Anteproyecto Sustitutivo del P. del S. 443, de 9 de enero de 1978 y Art. 179 del P. del S. 792 de 22 de noviembre de 1978.

Por otra parte, la aplicación de la tasación pactada por las partes a las subastas posteriores a una ejecución por la vía ordinaria parece haber sido implícitamente reconocida por este Tribunal en *Autoridad de Tierras* v. *Registrador,* 82 D.P.R. 338 (1961) y *Fernández Rivera* v. *Tribunal Superior,* 93 D.P.R. 629 (1966).

nada en el documento constitutivo de la hipoteca en muchos casos no resulta suficiente protección para el deudor. A ese efecto expresa: ". . . El sistema de fijación convencional del tipo de subasta tiene sus peligros, muchas veces nacidos de la ligereza con que se producen generalmente los contratantes en este punto, ligereza alimentada por la circunstancia de considerar, al tiempo de otorgar la escritura de constitución de hipoteca, que la posible subasta es un suceso improbable o remoto. Esto, unido al posible cambio del precio en venta de la propiedad inmueble al tiempo de la licitación, hace que casi siempre el tipo de tasación, al llegar el tiempo de actuar, se halla lejos de la realidad, lo cual puede dar lugar a desagradables sorpresas en el trámite de la subasta." Roca Sastre, *Derecho Hipotecario*, Tomo IV, Vol. 2, pág. 1033 (6ta. ed., 1968).

## II

■ Lo anterior no resuelve completamente la controversia de autos. El tribunal recurrido en su sentencia dispuso un tipo mínimo para la subasta, mayor del acordado por las partes en la escritura de hipoteca. Al así actuar se excedió en su autoridad. Careciendo nuestro ordenamiento jurídico de una disposición equivalente al Art. 1494 de la Ley de Enjuiciamiento Civil española no hay base en derecho para sostener la actuación del tribunal recurrido. Véase J. Morell y Terry, *Comentarios a la Legislación Hipotecaria*, Madrid, Ed. Reus, 1930, Vol. 4, a las págs. 95–96. *Cf.* R. Roca Sastre, *Derecho Hipotecario*, 6ta. ed., Barcelona, Bosch, 1968, Tomo IV, Vol. 2, a las págs. 1032–33. Pero *cf. Fernández Rivera* v. *Tribunal Superior*, 93 D.P.R. 629 (1966).

*Por consiguiente, se modifica la sentencia recurrida a los solos efectos de disponer que el tipo mínimo para la subasta del bien inmueble en este caso será el pactado por las partes, $25,000.00. Así modificada, se confirmará. La norma aquí establecida se aplicará a los procedimientos de ejecución de*

*hipoteca por la vía ordinaria que se inicien a partir de la fecha de este dictamen.*

Los Jueces Asociados Señores Torres Rigual y Díaz Cruz no intervinieron.

