Luis y Elizabeth Arroyo, etc., demandantes y peticionarios, *v.* Julio Ortiz Rivera y Nancy Franco, etc., demandados y recurridos.

*Número:* CE-86-742        *Resuelto:* 8 de abril de 1993

---

*Carlos M. Vargas Muñiz*, abogado de la parte demandante y peticionaria; *Ardellie Ferrer Lugo*, abogado de la parte demandada y recurrida.

EL JUEZ PRESIDENTE SEÑOR ANDRÉU GARCÍA emitió la opinión del Tribunal.

En el presente recurso habremos de expresarnos sobre el efecto de la omisión de incluir el precio mínimo de remate en el edicto que anuncia la venta judicial de un inmueble sobre la subasta celebrada para hacer efectiva la sentencia dictada en un pleito de ejecución de hipoteca por la vía ordinaria.

## I

Mediante la escritura número ciento treinta (130), otorgada el 2 de septiembre de 1977 ante el notario Don José Sabater, los esposos Julio Ortiz Rivera y Nancy Franco Muñoz constituyeron una hipoteca en garantía de un pagaré al portador por la suma principal de dos mil quinientos dólares ($2,500), más intereses al nueve y medio porciento (9 1/2%) anual y créditos accesorios por trescientos dólares ($300). En cumplimiento del requisito contenido en el Art. 221 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2721, se hizo constar en el párrafo quinto de dicha escritura lo siguiente:

C.– Para el caso de una ejecución y para que sirva de tipo a la primera subasta que hubiere de celebrarse se tasa la finca hipotecada en DOS MIL OCHOCIENTOS DOLARES - - - - - - ($2,800.00) sin derecho a nuevo avaluo o acción para conseguirlo. *Certiorari* de 6 de noviembre de 1986, Apéndice VII, págs. 3–4.

El 6 de mayo de 1982 los demandantes peticionarios, como tenedores del referido pagaré, presentaron una acción en ejecución de la hipoteca por la vía ordinaria. El 10 de junio de 1982 se anotó la rebeldía a los demandados, celebrándose la vista el 17 de enero de 1983.[1] En dicha vista, el codemandado Julio Ortiz Rivera se allanó a que se dictase sentencia por las alegaciones. El 20 de enero de 1983 el tribunal de instancia dictó sentencia para condenar a los demandados al pago de dos mil quinientos dólares ($2,500) de principal, mil quinientos setenta y cinco dólares con noventa y dos centavos ($1,575.92) de intereses acumulados, y trescientos dólares ($300) en concepto de costas, gastos y honorarios de abogado. El 5 de julio de 1983 se llevó a cabo finalmente la subasta en ejecución de la sentencia dictada. A esta subasta sólo concurrió a licitar el demandante, a quien se le adjudicó la buena pro por la suma de la sentencia, "una suma adicional de $200.00 del procedimiento de Subasta" (*Certiorari* de 20 de julio de 1987, Apéndice III), para un total de cuatro mil quinientos cincuenta y cinco dólares con noventa y dos centavos ($4,555.92).[2]

El edicto de subasta publicado previo a la referida venta judicial, disponía del modo siguiente:

EN EL TRIBUNAL SUPERIOR DE PUERTO RICO–SALA DE MAYAGUEZ–LUIS ARROYO Y ELIZABETH ARROYO, POR SU APODERADO PEDRO ARROYO PRATTS, DEMANDANTES VS. JULIO ORTIZ RIVERA Y NANCY FRANCO

---

[1] El 16 de septiembre de 1982 se enmendó la demanda a los efectos de añadir como parte a Estados Unidos de América, por razón de existir un embargo federal sobre el inmueble hipotecado.

[2] Del acta de subasta que obra en autos surge el hecho de que antes de dar comienzo a la subasta el 5 de julio de 1983, estaban presentes el apoderado de los demandantes y una persona llamada William Marini. Este último examinó la certificación registral y el edicto, protestando sobre la celebración de la subasta porque alegadamente no se dio aviso a los acreedores posteriores. El abogado de la parte demandante manifestó que al no constar de la certificación registral tales nombres, no venía obligado a expresarlos en el texto del edicto. El apoderado de los demandantes alegó, por su parte, que él tenía todos los pagarés posteriores. El señor Marini no expresó en ningún momento su deseo de licitar en la subasta.

MUÑOZ, DEMANDADOS, CIVIL NUM. CS-82-453, SOBRE EJECUCION DE HIPOTECA POR LA VIA ORDINARIA.

*EDICTO*

A: Julio Ortiz Rivera y Nancy Franco Muñoz

Yo, Angel Luis Martínez, Alguacil del Tribunal Superior de Puerto Rico, Sala de Mayagüez, por la presente CERTIFICO Y HAGO CONSTAR:

Que venderé en pública subasta al mejor postor, de contado y por moneda de curso legal de los Estados Unidos de América, en m[i] oficina sita en la calle Nenadich Esq. León de Mayagüez, Puerto Rico, el día 5 de julio de 1983, a las 10:00 de la mañana, la finca que a continuación se describe: ...

URBANA: Solar marcado con el número Cinco (5) del bloque "H" de la Urbanización Residencial Belmonte, localizada en el Barrio Sábalos del término Municipal de Mayagüez, Puerto Rico, con una cabida superficial de TRESCIENTOS OCHENTA Y TRES METROS CUADRADOS Y OCHO CENTIMETROS CUADRADOS (383.78 M/C) en [l]indes por el NORTE en catorce metros con la calle trece (13) por el SUR, en catorce metros con los solares quince y catorce; por el ESTE, en veintisiete metros cincuenta y seis centímetros con el solar número seis (6) y por el OESTE, en veintisiete metros veintiseis centímetros con el solar número cuatro (4).

Inscrita al folio 119 vuelto del tomo 823 de Mayagüez, finca número 23,784.

*Esta venta se hará para satisfacer la sentencia antes mencionada por la suma de $2,500.00 de principal, $1,575.92 de intereses acumulados hasta el 17 de enero presente, más los intereses vencidos a la fecha de la subasta, la suma de $300.00 en concepto de honorarios de abogado y una suma adicional de $200.00 para gastos del procedimiento de subasta.*

Para mayor información, los interesados pueden referirse al expediente que consta en los archivos del Tribunal bajo el número de epígrafe.

En Mayagüez, Puerto Rico, a 27 de Mayo de 1983. (Énfasis suplido.)

(*Fdo.*) Ángel Luis Martínez
*Alguacil*

El 26 de febrero de 1986 la parte demandada presentó una moción para solicitar que se declarara nula la subasta

celebrada en julio de 1983.([3]) Fundamentó dicha solicitud en el hecho de que en el edicto de subasta no se señaló el tipo mínimo que regiría en la primera subasta. El 27 de junio de 1986, el tribunal de instancia dictó una resolución para declarar con lugar la moción de la parte demandada y, en consecuencia, para declarar nula la subasta celebrada. De dicha resolución recurre ante nos la parte demandante señalando, en síntesis, que erró el tribunal de instancia al determinar que la omisión de indicar en el edicto de subasta el tipo mínimo de remate tuviese el efecto de hacer nula la subasta efectuada.

Vista la petición de *certiorari* presentada, concedimos término a la parte recurrida para que mostrara causa por la cual no debiera dejarse sin efecto la resolución recurrida y, en particular, para que ilustrara a este Tribunal sobre la procedencia de anular la subasta cuando la licitación en ésta excedió el precio mínimo provisto en la escritura de hipoteca. Habiendo comparecido los recurridos, procedemos a resolver.

## II

En Puerto Rico el procedimiento de ejecución de hipoteca por la vía ordinaria se rige por las disposiciones de las Reglas de Procedimiento Civil de 1979 —Regla 51.3 *et seq.*, 32 L.P.R.A. Ap. III— y por los artículos de la Ley Hipotecaria y del Registro de la Propiedad de 1979 que expresamente el legislador hizo aplicables al procedimiento ordinario. Véase 30 L.P.R.A. sec. 2701.([4]) "El proce-

---

([3]) En la resolución recurrida, el juez de instancia hace referencia al hecho de que los codemandados habían presentado anteriormente dos (2) mociones para solicitar la nulidad de la subasta, las cuales fueron declaradas sin lugar por el tribunal de instancia.

([4]) Esta sección expresamente hace aplicables al procedimiento ordinario el Art. 202 (30 L.P.R.A. sec. 2702), el Art. 207V–VI, 30 L.P.R.A. sec. 2707V–VI, el Art. 211 (30 L.P.R.A. sec. 2711), los Arts. 220–224 (30 L.P.R.A. secs. 2720–2724), el Art. 226 (30 L.P.R.A. sec. 2726) excluyendo la frase relativa al requisito de confirmación, los Arts. 227–229 (30 L.P.R.A. secs. 2727–2729), el Art. 231 (30 L.P.R.A. sec. 2731), el

dimiento ejecutivo sumario vino a suplementar, no a sustituir, al procedimiento de ejecución de hipoteca por la vía ordinaria." *Ponce Federal Savings v. Gómez*, 108 D.P.R. 585, 587 (1979). Por tal razón, para determinar cuáles son los requisitos que deben observarse para la celebración de la correspondiente venta judicial, una vez recaída la sentencia en el procedimiento ordinario, debemos acudir a ambos cuerpos de ley. Específicamente, con respecto al contenido del aviso sobre la subasta que ha de efectuarse, la Regla 51.8 de Procedimiento Civil, 32 L.P.R.A. Ap. III, dispone, en lo pertinente:

> ... El aviso de venta describirá adecuadamente los bienes a ser vendidos y se referirá sucintamente además, a la sentencia a ser satisfecha mediante dicha venta, con expresión del sitio, día y hora en que habrá de celebrarse la venta. Si los bienes fueren susceptibles de deterioro, el tribunal, a solicitud de parte, podrá reducir el término de publicación a menos de dos (2) semanas. *Será nula toda venta judicial que se realice sin dar cumplimiento al aviso de venta en la forma indicada, sin perjuicio de la responsabilidad de la parte que promoviere la venta sin cumplir con tal aviso.* (Énfasis suplido.)

Por otra parte, sobre el contenido del edicto de subasta, el Art. 220 de la Ley Hipotecaria y del Registro de la Propiedad de 1979 (30 L.P.R.A. sec. 2720) —también aplicable al procedimiento ordinario— dispone:

> En el edicto de subasta que libre el alguacil expresará:
> (a) Que los autos y todos los documentos correspondientes al procedimiento incoado estarán de manifiesto en la secretaría del tribunal durante las horas laborables.
> (b) Que se entenderá que todo licitador acepta como bastante la titulación y que las cargas y gravámenes anteriores y los preferentes, si los hubiere, al crédito del ejecutante continuarán subsistentes entendiéndose que el rematante los acepta y queda subrogado en la responsabilidad de los mismos, sin destinarse a su extinción el precio del remate, debiéndose especificar el montante de cada carga anterior o preferente, el nombre

---

Art. 232 (30 L.P.R.A. sec. 2732) y el Art. 234 (30 L.P.R.A. sec. 2734), todos de la Ley Hipotecaria y del Registro de la Propiedad.

o nombres de sus titulares y fecha o fechas de vencimiento, si figuran en la certificación del Registro que se acompañó al escrito inicial.

Dicho edicto, además de exponer la descripción de los bienes o derechos reales objeto de subasta, *el precio mínimo del remate* y los restantes detalles complementarios sobre la subasta, señalarán el día, hora y sitio en que se efectuará el remate; y servirá también para hacer saber la subasta a los acreedores que tengan inscritos o anotados sus derechos sobre los bienes hipotecados con posterioridad a la inscripción del crédito del ejecutante, o acreedores de cargas o derechos reales que los hubiesen pospuesto a la hipoteca del actor y a los dueños, poseedores, tenedores de o interesados en títulos trasmisibles por endoso o al portador garantizados hipotecariamente con posterioridad al crédito del actor, y con los cuales no hubiese tenido efecto la notificación personal del escrito inicial y del mandamiento del requerimiento de pago, expresándose en el texto del edicto todos los nombres de estos interesados, si resultan de la certificación del Registro, para que puedan concurrir a la subasta si les conviniere o satisfacer antes del remate el importe del crédito, de sus intereses, costas y honorarios de abogados asegurados, quedando entonces subrogados en los derechos del acreedor ejecutante. (Énfasis suplido.) 20 L.P.R.A. sec. 2720.

Interpretando las anteriores disposiciones en forma restrictiva, el tribunal de instancia concluyó que la omisión de informar en el edicto el precio que habría de servir como tipo mínimo en el remate "es un defecto ligado al debido proceso de ley, por lo que es nula la subasta efectuada el 5 de julio de 1983". *Certiorari* de 6 de noviembre de 1986, Apéndice I, pág. 3. No tiene razón. Veamos por qué.

## III

Al igual que en el procedimiento ejecutivo sumario, en el procedimiento ordinario el tipo o precio mínimo de remate *será el precio de tasación pactado por las partes en la escritura de constitución de hipoteca.*[5] En la primera

---

[5] El precio de tasación será el pactado en la escritura de constitución de hipoteca que se ejecuta, aunque se haya fijado un valor distinto en otras escrituras de hipoteca de la misma finca. C. Díaz González, *Derecho Hipotecario*, Madrid, Ed. Rev. Der. Privado, 1967, Vol. III, pág. 293.

subasta no se admitirá oferta alguna *que sea inferior al precio pactado*. Véase, a esos efectos, el Art. 221 de la Ley Hipotecaria y del Registro de la Propiedad, *supra*. Ese es el estado de derecho desde que en el caso *Ponce Federal Savings v. Gómez*, supra, extendimos el requisito de la previa tasación al procedimiento ejecutivo ordinario. Allí expresamos que "[e]l fiel cumplimiento del mandato legislativo requiere que la previa tasación acordada por las partes en la escritura de hipoteca debe servir de tipo mínimo en toda subasta de un inmueble que se celebre como consecuencia de la ejecución de un crédito hipotecario, independientemente de la vía que para ello elija el acreedor, y así lo resolvemos". (Escolio omitido.) *Ponce Federal Savings v. Gómez,* supra, pág. 590. Nuestra decisión en el citado caso respondió al mismo fundamento por el cual se hizo mandatoria la tasación previa a la utilización de la vía de ejecución sumaria. "La ausencia de justiprecio como tipo mínimo para las subastas dio lugar a numerosos abusos, lográndose las adjudicaciones por cantidades irrisorias." *Ponce Federal Savings v. Gómez*, supra, pág. 588. Por lo tanto, el verdadero propósito que persigue la exigencia de la previa tasación es evitar por todos los medios el que se adjudique el inmueble por un precio demasiado bajo que afecte tanto los derechos del acreedor *como los del deudor hipotecario*.

En España, el procedimiento de ejecución de hipoteca por la vía ordinaria está regido por el Art. 1429 *et seq.* de la Ley de Enjuiciamiento Civil española. Ésta dispone que el precio mínimo de remate se determinará mediante el avalúo pericial de los bienes que han de subastarse, siendo necesario, por lo tanto, el requisito de la previa tasación sólo en los casos en los que se utilice el procedimiento sumario. En el contexto del procedimiento ejecutivo sumario, la Corte Suprema de España, en la Sentencia de 20 de junio de 1956, declaró que "la falta de consignación en el edicto anunciando la subasta del precio de licitación, *sólo*

*atañe a los que hubieran de intervenir en ella*, y no a la recurrente, y desde el momento en que en el edicto se hizo constar que el precio de licitación sería el pactado en la escritura de hipoteca y que *los autos estarían de manifiesto en la Secretaría*, implícitamente se fijaba y todo el que tuviera interés en licitar podía comparecer en ella para conocerlo, sin que su omisión en el anuncio de subasta originara daño ni menoscabo para nadie". (Énfasis suplido.) Aranzadi, *Legislación Civil: Leyes Hipotecarias*, 1977; J.M. Chico y Ortiz, *Estudios sobre Derecho Hipotecario*, Madrid, Ed. Marcial Pons, 1982, T. I, pág. 1011; R.M. Roca Sastre, *Derecho Hipotecario*, 7ma ed., Barcelona, Ed. Bosch, 1979, T. IV, pág. 1131. Al consignar el Art. 220 de la Ley Hipotecaria y del Registro de la Propiedad de 1979, *supra*, que "los autos y todos los documentos correspondientes al procedimiento incoado estarán de manifiesto en la secretaría del tribunal durante las horas laborables", ello implica acceso a éste y, por ende, a la escritura de hipoteca en la que se establece el precio mínimo de subasta.

En vista de lo anterior hay que presumir que, *independientemente de que se haya publicado el precio mínimo de licitación en el edicto*, las personas que se interesan en participar en la subasta habrán de recurrir previamente al expediente judicial para conocer de antemano el monto al cual habrá de ascender la sentencia *al momento* de la subasta y *los gravámenes o cargas anteriores o preferentes*, según constan de la certificación registral requerida por el Art. 209 de la Ley Hipotecaria y del Registro de la Propiedad de 1979 (30 L.P.R.A. sec. 2709) a los fines de hacer una determinación respecto al verdadero precio en que realmente habrá de ser vendido el inmueble subastado. Sin un examen de dicho expediente, a ninguna persona sensata se le ocurriría hacer una decisión respecto a si le conviene o no participar en la subasta de que se trate.

Ilustrativo de lo anterior es que, al momento de su

venta judicial, pesaban sobre el inmueble objeto de este caso los siguientes gravámenes anteriores a la inscripción de la hipoteca que fue ejecutada por medio de la referida venta:

a. Hipoteca a favor de The United Federal Savings and Loan Association of Puerto Rico, por la suma principal de *treinta y tres mil cien dólares ($33,100)*.

b. Hipoteca en garantía de un pagaré al portador por la suma principal de *cinco mil dólares ($5,000)*.

c. Hipoteca en garantía de un pagaré al portador por la suma principal de *mil seiscientos dólares ($1,600)*.

d. Hipoteca en garantía de un pagaré al portador por la suma principal de *tres mil cuatrocientos dólares ($3,400)*.

Dichos cuatro (4) gravámenes anteriores sumaban la cantidad de *cuarenta y tres mil cien dólares ($43,100)*. Por lo tanto, aunque no podemos asegurarlo por no surgir de los autos, es muy probable que el inmueble subastado en este caso costó a los demandantes recurrentes una suma superior a los cuatro mil quinientos setenta y cinco dólares con noventa y dos centavos ($4,575.92) pagados por ellos en la referida venta judicial.[6]

IV

La subasta celebrada en este caso fue para ejecutar una sentencia obtenida en un procedimiento civil *ordinario*. A esos efectos, dispone la Regla 51.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, que el procedimiento para ejecutar una sentencia u orden para el pago de una suma

---

[6] La referida propiedad fue adquirida por los esposos recurridos el 4 de *diciembre* de *1973*, fecha en que constituyeron la primera hipoteca por la suma principal de *treinta y tres mil dólares ($33,000)*. Ésta habría de ser pagada en plazos mensuales de doscientos setenta y siete dólares con setenta y ocho centavos ($277.78), comenzando el 1ro de enero de 1974 y terminando el 1ro de diciembre de *1988*. Al momento de la venta judicial de dicha propiedad habían transcurrido nueve años y medio (9 1/2) desde que fue adquirida por dichos esposos. No surge de los autos la cantidad a la cual estaba reducida dicha deuda.

de dinero será mediante mandamiento de ejecución, el cual *"especificará los términos de la sentencia y la cantidad pendiente de pago"*.([7]) Íd. Además, dispone el inciso (b) de la Regla 51.3 de Procedimiento Civil, *supra*, que "[e]n las sentencias que se dicten en juicios sobre ejecución de hipotecas y otros gravámenes se ordenará que el demandante *recupere su crédito, intereses y costas* mediante venta de la finca sujeta al gravamen". (Énfasis suplido.) Como hemos ya señalado, la Regla 51.8(a) de Procedimiento Civil, 32 L.P.R.A. Ap. III, dispone que el aviso de la venta que ha de publicarse "se referirá sucintamente además, *a la sentencia a ser satisfecha mediante dicha venta ...*". (Énfasis suplido.)

En cumplimiento de las anteriores disposiciones se hizo constar en el edicto de subasta publicado en este caso que la venta sería hecha para satisfacer la sentencia dictada, habiéndose hecho en el aviso un desglose de cada una de las partidas, cuyo pago fue dispuesto por el tribunal, más otra partida de doscientos dólares ($200) para "gastos del procedimiento de subasta". La suma de dichas partidas constituyó el precio por el cual la parte ejecutante se adjudicó la propiedad: cuatro mil quinientos setenta y cinco dólares con noventa y dos centavos ($4,575.92), suma que representaba casi el doble del valor pactado para que sirviera de precio mínimo en la primera subasta. Ningún perjuicio sufrió, por lo tanto, el deudor hipotecante. Por el contrario, la venta por el precio mínimo pactado en la escritura de constitución de la hipoteca hubiera resultado desfavorable al deudor demandado ya que, según dispone el inciso (b) de la citada Regla 51.3, si el resultado de la venta "fuese insuficiente para satisfacer la totalidad de la sentencia, entonces el alguacil procederá a recuperar el resto del dinero o remanente del importe de la sentencia sobre cualquiera otra propiedad del demandado, como en el

---

([7]) Surge de los autos que el mandamiento de ejecución expedido en este caso cumplió con dichos requisitos.

caso de cualquiera otra ejecución ordinaria". No hace sentido, pues, que se anule la subasta celebrada en este caso por no haberse publicado el precio mínimo en el aviso de subasta cuando el precio tasado por las partes en la escritura de constitución de hipoteca *era inferior al monto de la sentencia* que habría de ser ejecutada, cuyo monto *sí* fue informado en el referido aviso.

Lo resuelto por este Tribunal en *Ponce Federal Savings v. Gómez*, supra, no milita en contra de la anterior conclusión. Allí, el banco ejecutante recurrió ante nos de la disposición del tribunal de instancia, al efecto de que " 'de hacer el Banco demandante alguna oferta en la subasta, la misma deberá ser por una suma no menor del importe total del crédito que se ejecuta' ". Íd., pág. 586. Dicho importe era *mayor* al precio mínimo de licitación pactado por las partes en la escritura de constitución de hipoteca. Alegó el Banco recurrente "que el tribunal de instancia carecía de poder para fijar como precio mínimo el importe total de la obligación a la fecha de la subasta". Íd., pág. 587. Resolvimos, ante dicho planteamiento, que el tribunal de instancia se excedió en su autoridad al disponer como tipo mínimo para la subasta uno *mayor* al acordado por las partes en la escritura de hipoteca. Por lo tanto, la mencionada decisión a quien favoreció fue al *acreedor ejecutante* y no al deudor hipotecante. Sin embargo, en el presente caso fue el propio acreedor hipotecario el que voluntariamente fijó y pagó un precio *mayor* al tipo mínimo convenido por las partes en la escritura de constitución de hipoteca. No vemos cómo puede quejarse el deudor de algo que, a todas luces, lejos de perjudicarle obró en su beneficio.

## V

■ Por su naturaleza de acto público, la subasta o remate exige que se anuncie su celebración con la anticipación necesaria para la normalidad de la licitación. De igual

forma, los edictos que se publiquen con tal propósito deben, para cumplir con su cometido, ser publicados con todos los extremos que exige la ley, *especialmente por razón de que en nuestro ordenamiento jurídico rige el sistema de la subsistencia de cargas preferentes* . Véase Roca Sastre, *supra.*

■ Por lo tanto, el requisito de publicar el precio mínimo que ha de servir de base a la primera subasta dispuesto en el segundo párrafo del inciso (c) del Art. 220 de la Ley Hipotecaria y del Registro de la Propiedad de 1979, *supra*, es de estricto cumplimiento y será deber de los tribunales velar por que dicho requisito sea cumplido. Su omisión, sin embargo, *en circunstancias como las del presente caso en que no se ha demostrado que se haya causado un daño o perjuicio al propietario del inmueble ejecutado ni a persona otra alguna como resultado de dicha omisión*, no ha de causar la nulidad de la subasta y la resultante venta judicial, ya que no se derrotó en forma alguna el propósito perseguido por la medida que exige pactar la tasación del inmueble en la escritura de hipoteca.[8] Por consiguiente, resolvemos que, habiéndose hecho constar en el edicto o aviso de subasta que la venta habría de ser hecha para satisfacer el monto de la sentencia más otra suma para gastos, con expresión de las cantidades a las cuales ascendían cada una de las partidas dispuestas en la sentencia, así como el monto de esa otra suma, siendo el total de dichas cantidades mayor al precio mínimo de licitación pactado por las partes en la escritura de constitución de hipoteca, y en ausencia de prueba sobre daño o menoscabo causado a alguna parte interesada en el remate del inmueble, la omisión de incluir en el edicto de subasta el precio mínimo tasado en la escritura de hipoteca no constituye una violación al debido proceso de ley; por lo tanto, no hizo

---

[8] Distinta hubiese sido la situación de haberse rematado el inmueble en cuestión por un precio menor que el pactado por las partes en la mencionada escritura. Claramente dicha situación hubiera sido contraria a las disposiciones del Art. 221 de la Ley Hipotecaria y del Registro de la Propiedad de 1979 (30 L.P.R.A. sec. 2721).

nula la venta judicial en ejecución de la sentencia dictada en este caso.

Por los fundamentos antes expuestos, *se dictará sentencia para revocar la resolución recurrida que declaró nula la subasta efectuada el 5 de julio de 1983, decretándose que ésta es completamente válida en cuanto adjudicó el inmueble objeto de ejecución al único licitador presente en la mencionada subasta.*

Los Jueces Asociados Señores Negrón García y Hernández Denton disintieron mediante sendas opiniones escritas.

## — O —

Opinión disidente emitida por el Juez Asociado Señor Negrón García.

### I

La gravedad de haberse omitido en el edicto el precio mínimo de remate trasciende este recurso. Su impacto en materia hipotecaria se comprende mejor penetrando las dimensiones *sustantiva* y *procesal* de lo que verdaderamente es una subasta.

*Sustantivamente* hablando, el precio mínimo representa la oferta *ex lege*, que como proposición inicial unilateral tiene que ponerse en el edicto y dirigirse al público en general. "Se llaman [ofertas o posturas] a las proposiciones de precio de compra que hacen los diferentes licitadores o postores en subasta ...." L. Muñoz Morales, *Lecciones de Derecho Hipotecario*, 1946, T. II, pág. 277. Como expone J.A. Garrone, *Diccionario Jurídico Abeledo-Perrot*, Buenos Aires, Ed. Abeledo-Perrot, 1987, Vol. III, pág. 456 —en torno al perfeccionamiento del remate— "[l]as propuestas sucesivas de los concurrentes constituyen otras tantas aceptaciones perfeccionadoras *de un contrato de compra-*

*venta sometido a condición resolutoria: oferta de mayor precio de otro licitante".* (Énfasis suplido.)

Así lo habíamos entendido hasta ahora. Sabido es que el precio cierto es requisito esencial del contrato de compraventa. Art. 1334 del Código Civil, 31 L.P.R.A. sec. 3741. En *Cancel v. Municipio de San Juan*, 101 D.P.R. 296, 299 (1973), específicamente aclaramos que la adjudicación de la buena pro a un licitador ata a las partes. La *primera oferta*, precisamente la que se utiliza para convocar una subasta judicial, no es otra que el tipo mínimo pactado, precio cierto de esa primera oferta. Es *indispensable*, pues, que aparezca en el edicto de subasta, ya que de lo contrario la oferta no existiría. Esa fue la razón por la cual en *Prods. Tommy Muñiz v. COPAN*, 113 D.P.R. 517, 523 (1982), nos pronunciamos al "efecto de que la adjudicación de la buena pro a un licitador *crea vínculo contractual*, arranca evidentemente del *supuesto de una oferta* que contenga *todos* los elementos esenciales para la conclusión del contrato; de una *oferta verdadera*, como afirma Puig Brutau". (Énfasis suplido.)

## II

En el ámbito *procesal*, una subasta judicial "puede ser definida como el acto de ofrecimiento público de los bienes y adjudicación, en su caso, al mejor postor". J. Guasp, *La ejecución procesal en la Ley Hipotecaria*, Barcelona, Ed. Bosch, pág. 140.

Como surge de esta definición, se trata de un evento cuya verificación exige la más *amplia y exacta publicidad*, de manera que concurran el mayor número de licitadores y, como resultado, se logre el más alto y mejor precio posible. En términos de percepción pública, el precio mínimo inicial de remate pactado, lógicamente, es uno de los elementos de juicio valorativos más importante que atraerá o no la atención del lector del edicto.

Si no se consigna en su texto, ¿cómo se supone que se enteren los potenciales licitadores? La justicia siempre tiene dos (2) caras. No basta, al decir mayoritario, que los interesados pueden acudir *previamente* a examinar el expediente del tribunal. Opinión mayoritaria, pág. 71. Esa gestión prudencial no subsana el defecto inicial, pues siempre tendrá que hacerse con posterioridad al edicto. Si ello fuese suficiente, ¿por qué la Ley Hipotecaria y del Registro de la Propiedad taxativamente manda que se publique el precio exacto? Insistimos: el precio mínimo inicial que aparezca, unido a la descripción del inmueble, serán verdaderamente los factores determinantes que captarán el interés, la curiosidad y eventual asistencia a la subasta de los lectores del edicto.

Ante estas circunstancias, mal precedente invoca la mayoría —S. de 20 de junio de 1956, Núm. 2499, XXIII Repertorio de Jurisprudencia 1712— pues allí se estimó que se había anunciado *implícitamente*, ya que en el edicto expresamente se hizo constar "que el precio de licitación sería el pactado en la escritura de hipoteca ...". Aquí, eso ni siquiera se hizo.

### III

La seriedad y la consecuencia negativa de haberse dejado fuera del edicto el precio mínimo inicial pactado de dos mil ochocientos dólares ($2,800) puede apreciarse mejor recordando que la *única* cuantía o precio que se le comunicó al público fue:

> Esta *venta se hará* para satisfacer la sentencia antes mencionada *por la suma* de $2,500.00 de principal, $1,575.92 de intereses acumulados hasta el 17 de enero presente, más los intereses vencidos a la fecha de la subasta ... y una suma adicional [de] $200.00 para gastos del procedimiento de subasta. (Énfasis suplido.) *Certiorari* de 20 de julio de 1987, Apéndice I.

*Este lenguaje fue confuso y engañoso.* Nos explicamos.

Obviamente, sin mencionarse el precio mínimo inicial pactado de dos mil ochocientos dólares ($2,800), por implicación, dicho lenguaje proyectó y dio la falsa impresión de que el total de esas cantidades —cuatro mil doscientos setenta y cinco dólares con noventa y dos centavos ($4,275.92), excluyendo los intereses que vencían a la fecha de la subasta— *era precisamente la cuantía mínima.* Distinto a como intima la mayoría, nunca se avisó al público de que el precio mínimo *"era inferior al monto de la sentencia* que habría de ser ejecutada ...".* (Énfasis en el original.) Opinión mayoritaria, pág. 74.

Ese lenguaje y la forma de *destacar únicamente un precio* (más *alto*), ¿no afectó ni desanimó la asistencia de un número mayor de posibles licitadores? ¿Vamos a sostener que es lo mismo, y genera igual interés o curiosidad, una propiedad susceptible de adquirirse por el precio mínimo de subasta de dos mil ochocientos dólares ($2,800) *vis-à-vis* cuatro mil doscientos setenta y cinco dólares con noventa y dos centavos ($4,275.92)? ¿Sería esa la razón por la cual *no compareció ningún licitador?* ¿Podemos seriamente especular entonces, como lo hace la mayoría, que su omisión y el haber puesto en el edicto una cantidad más *alta*, en modo alguno perjudicó al deudor? Opinión mayoritaria, pág. 73.

Si de especulaciones se trata, lo razonable, en términos de probabilidades, es lo contrario. Y, ciertamente, nuestras interrogantes no quedan satisfactoriamente explicadas con el solo argumento mayoritario de que se pagó un precio mayor del tipo mínimo estipulado. Opinión mayoritaria, pág. 73. Olvidan que este procedimiento no "trata de una venta voluntaria, *sino forzada*, en la que el precio razonable debe determinarse, no en relación con el valor del inmueble en el mercado, *sino con respecto a lo que se puede obtener en una subasta pública ...".* (Énfasis suplido.) *Figueroa v. Banco de San Juan*, 108 D.P.R. 680, 692 (1979). Y aquí, en particular, la mayoría no toma en cuenta que al

acto de la subasta, repetimos, *no* compareció ningún licitador. *Sin que nadie más pudiera pujar en su contra, poco importa que el representante de los demandantes, señor Arroyo Pratts, ofreciera el crédito de la sentencia*; situación que le benefició sobremanera, pues, para ellos, era *imperativo* adquirir la propiedad. La razón surge del Acta de Subasta: según informó allí el propio señor Arroyo Pratts, tenían "todos los pagarés posteriores". Evidentemente iban decididos a obtener la *buena pro*; en el argot pueblerino, "se pusieron las botas".

## IV

Los preceptos que exigen que aparezca en el edicto el tipo mínimo (precio cierto) de la primera subasta responden a "que el procedimiento de ejecución de hipotecas, al trastocar derechos reales, provee ciertas garantías y salvaguardas a los derechos de quienes, de una u otra forma, están ligados al devenir de la propiedad en ejecución". *Ponce Federal v. Arblas Inds. Supp., Inc.*, 132 D.P.R. 687 (1993). No nos debe extrañar, pues, que la Ley Hipotecaria y del Registro de la Propiedad brinde la protección necesaria, en evitación de fraude y violación al debido procedimiento de ley.[1]

---

[1] El Art. 179 de la Ley Hipotecaria y del Registro de la Propiedad de 1979 (30 L.P.R.A. sec. 2575), titulado "Valor de la finca en la escritura; requisito indispensable para ejecutar", establece:

"Para que pueda tramitarse la ejecución y cobro de un crédito hipotecario, con arreglo al procedimiento sumario o bien con arreglo al procedimiento ordinario, *será indispensable* que en la escritura de constitución de la hipoteca *se determine el precio* en que los interesados tasen la finca o derecho real hipotecario, *para que sirva de tipo en la primera subasta que se deba celebrar.*

"Para la segunda y tercera subasta regirán los tipos señalados en la sec. 2721 de este título." (Énfasis suplido.)

Más adelante, en su Art. 220 (30 L.P.R.A. sec. 2720) exige que se informe en el edicto de subasta el precio mínimo del remate y los restantes detalles complementarios sobre la subasta. En su Art. 221 (30 L.P.R.A. sec. 2721) advierte que "servirá de tipo para la subasta en [dicho] procedimiento el precio en que hayan tasado la finca los contratantes en la escritura de constitución de hipoteca y no se admitirá oferta alguna inferior a dicho tipo". El alguacil que celebre la subasta buscará obtener el *precio más elevado posible.* Art. 223 de la Ley Hipotecaria y del Registro de la Pro-

En *Dapena Quiñones v. Vda. de Del Valle*, 109 D.P.R. 138, 141–142 (1979), hicimos rápido inventario de las omisiones que constituyen defectos fundamentales en el edicto de subasta: "la falta de notificación a acreedores posteriores, error en la fecha de subasta, *insuficiente publicación o deficiente descripción* de la propiedad a realizarse. Tales vicios o defectos sustanciales, *inextricablemente* ligados al debido proceso de ley, niegan validez jurídica al edicto, *independientemente de que se demuestre perjuicio a alguna parte* y se hallan, por tanto, dentro del campo de depuración en que se ejercitan la acción supervisora y la iniciativa del tribunal". (Énfasis suplido.)

La teoría mayoritaria descansa precisamente en que no medió prejuicio, lo cual dista mucho de la realidad y doctrina imperante.

*Recapitulando*, omitir el precio mínimo del remate en el edicto de subasta incide en uno de sus requisitos *esenciales*. Socava la relación contractual sustantiva del acto de una subasta, ya que niega la creación de una oferta inicial verdadera. Si, además, lo que sólo se pone en el edicto es información confusa e incompleta del precio inicial —en el de autos tuvo el efecto de sustituir el verdadero precio mínimo pactado en la hipoteca por el de la cuantía mayor de la sentencia— el único remedio judicial es decretar la nulidad de la subasta.

Cuando la Ley Hipotecaria y del Registro de la Propiedad de 1979 requiere ciertas garantías, no hay margen para interpretaciones que injustamente beneficien de forma exclusiva a los acreedores y agraven más la situación de los deudores.

---

piedad de 1979 (30 L.P.R.A. sec. 2723).

– O –

Opinión disidente emitida por el Juez Asociado Señor Hernández Denton.

Por entender que la omisión de incluir el tipo mínimo de remate en la publicación del edicto de subasta de un inmueble constituye un error sustancial que hace nulo el acto de subasta, disentimos.

I

La génesis procesal del caso de marras se da con la presentación el 6 de mayo de 1982 de una demanda en ejecución de hipoteca por la vía ordinaria. Luego de varios incidentes procesales, el tribunal de instancia dictó sentencia en la que se condenó a los codemandados al pago de dos mil quinientos dólares ($2,500) de principal, mil quinientos setenta y cinco dólares con doce centavos ($1,575.12) de intereses acumulados y trescientos dólares ($300) en concepto de costas, gastos y honorarios de abogado.

El 5 de julio de 1983 se ordenó la subasta del inmueble en ejecución de la sentencia. En dicha subasta sólo compareció el acreedor hipotecario, al cual se le adjudicó la subasta. Luego de la celebración de la subasta, los codemandados solicitaron que ésta se declarase nula porque en el edicto de subasta no se había incluido el tipo mínimo de remate estipulado en la escritura de hipoteca para la celebración de la primera subasta.

Posteriormente, el tribunal de instancia declaró nula la subasta por entender que el no incluir el tipo mínimo en el edicto de subasta era un defecto sustancial. En su resolución, el tribunal a quo determinó que tampoco se incluyó el tipo mínimo de remate en el mandamiento de ejecución de sentencia ni en el acta de subasta.

El 7 de noviembre de 1986, los demandantes recurren ante este Tribunal alegando, entre otras cosas, que el tri-

bunal a quo incidió porque, aun aceptando que no se incluyó en el edicto de subasta el tipo mínimo de remate, lo cierto fue que la venta se hizo por un precio mayor a tipo mínimo estipulado en la escritura de hipoteca. El 26 de noviembre de 1986 emitimos una orden a los codemandados para que mostraran causa por la cual no debiéramos dejar sin efecto dicha resolución.

Hoy, la mayoría de este Tribunal, al revocar dicha resolución, estima que "en ausencia de prueba sobre daño o menoscabo causado a alguna parte interesada en el remate del inmueble, la omisión de incluir en el edicto de subasta el precio mínimo tasado en la escritura de hipoteca no constituye una violación al debido proceso de ley ...". Opinión mayoritaria, pág. 75. No podemos estar de acuerdo.

## II

La palabra "edicto" proviene del latín *edictum*, que significa el "[a]cto de publicidad, que se realiza de varias formas, de una orden, acuerdo o prevención de la Autoridad, para que llegue al conocimiento de todos o de la persona a quien particularmente afecte". I. de Casso y Romero y F. Cervera y Jiménez-Alfaro, *Diccionario de Derecho Privado*, Barcelona, Ed. Labor, S.A., 1954, T. I, pág. 1674. Diversos cuerpos de ley se encargan de regular la manera y forma en que se deben publicar los edictos.

En el caso específico del edicto de subasta, en los procedimientos de ejecución de hipoteca, el Art. 220 de la Ley Hipotecaria y del Registro de la Propiedad de 1979 (30 L.P.R.A. sec. 2720) dispone cual será la información que por mandato de ley deberá contener dicho edicto:[1]

---

[1] El Art. 201 de la Ley Hipotecaria y del Registro de la Propiedad de 1979 (30 L.P.R.A. sec. 2701) hizo extensivo lo dispuesto en el Art. 220 (30 L.P.R.A. sec. 2720) a los procedimientos de ejecución de hipoteca por la vía ordinaria.

Además, el acreedor hipotecario deberá cumplir con lo dispuesto en la Regla 51.3 *et seq.* de Procedimiento Civil, 32 L.P.R.A. Ap. III, que dispone en lo referente lo siguiente:

En el edicto de subasta que libre el alguacil expresará:

. . . . . . . .

(b) Que se entenderá que todo licitador acepta como bastante la titulación y que las cargas y gravámenes anteriores y los preferentes, si los hubiere, al crédito del ejecutante continuarán subsistentes entendiéndose que el rematante los acepta y queda subrogado en la responsabilidad de los mismos, sin destinarse a su extinción el precio del remate, debiéndose especificar el montante de cada carga anterior preferente, el nombre o nombres de sus titulares y fecha o fechas de vencimiento, si figuran en la certificación del Registro que se acompañó al escrito inicial.

Dicho edicto, además de exponer la descripción de los bienes o derechos reales objeto de subasta, *el precio mínimo del remate* y los restantes detalles complementarios sobre la subasta, señalarán el día, hora y sitio en que se efectuará el remate; y servirá también para hacer saber la subasta a los acreedores que tengan inscritos o anotados sus derechos sobre los bienes hipotecados con posterioridad a la inscripción del crédito del ejecutante .... (Énfasis suplido.)

Como vemos, la ley es muy clara al requerir que se incluya en la publicación del edicto *el precio mínimo de remate* que regirá la primera subasta.(²) Sin embargo, la mayoría de este Tribunal, obviando la letra de la ley y los preceptos de hermenéutica, utiliza como *ratio decidendi* que la omisión de incluir el precio mínimo de remate no es causal de nulidad de la subasta si no se demuestra que alguna persona sufrió algún daño. Añaden que como en el caso de autos se adjudicó el bien inmueble por un precio mayor al estipulado en la escritura de hipoteca, se cumplió

---

"(b) En las sentencias que se dicten en juicios sobre ejecución de hipotecas y otros gravámenes se ordenará que el demandante recupere su crédito, intereses y costas mediante venta de la finca sujeta al gravamen. Al efecto, se expedirá una orden al alguacil, disponiendo que proceda a venderla para satisfacer la sentencia, *en la forma prescrita por la ley* para la venta de propiedad bajo ejecución ...." (Énfasis suplido.)

(²) El día de la subasta será deber del alguacil dar lectura al edicto en alta voz e invitar a las personas allí presentes a hacer ofertas por los bienes objetos de remate, a base del precio mínimo. Art. 223 (30 L.P.R.A. sec. 2723).

con el propósito perseguido por la medida, que es pactar la tasación del inmueble en la escritura de hipoteca.([3])

No nos cabe duda que la omisión de incluir en el edicto de subasta el precio mínimo de remate constituye un error fundamental que trae como consecuencia que el deudor hipotecario pueda ser privado de su propiedad sin un debido proceso de ley. Hemos dicho que "defectos fundamentales del edicto de subasta como lo son, entre otros, la falta de notificación a acreedores posteriores, error en la fecha de subasta, insuficiente publicación, o deficiente descripción de la propiedad a realizarse. Tales vicios o defectos substanciales, inextricablemente ligados al debido proceso de ley, niegan validez jurídica al edicto, *independientemente de que se demuestre perjuicio a alguna parte* y se hallan, por tanto, dentro del campo de depuración en que se ejercitan la acción supervisora y la iniciativa del tribunal". (Énfasis suplido.) *Dapena Quiñones v. Vda. de Del Valle*, 109 D.P.R. 138, 141–142 (1979). Es claro que en aquella ocasión rechazamos utilizar como razón decisoria para validar un edicto incompleto *el hecho de que se haya demostrado perjuicio o no a alguna parte*. Hoy, la opinión mayoritaria, olvidando nuestros pronunciamientos, basa su decisión en este axioma. Olvida que el defecto en el edicto al omitir el precio mínimo fijado constituye un error sustancial que no solamente está ligado al debido proceso de ley, sino que lesiona la publicidad idónea a la cual aspira un edicto en que se anuncia la venta de un bien inmueble en subasta pública. Su carácter público se ve afectado por la ausencia de una notificación que incluye toda la información esencial que necesita un ciudadano para decidir si comparece a estas subastas. De lo contrario, se desvirtuaría todo el propósito principal de la publicación en el edicto de subasta.

---

([3]) El precio fijado en la escritura de hipoteca fue de dos mil ochocientos dólares ($2,800). La finca se adjudicó al acreedor hipotecario por la cantidad de cuatro mil quinientos setenta y cinco dólares con noventa y dos centavos ($4,575.92).

No podemos ignorar de que aquí se trata de la venta de un inmueble en subasta pública. La ley dispone que mediante la publicación del edicto se informe de antemano las condiciones para la celebración de la subasta y se invite a todos aquellos interesados a que comparezcan a este acto público. Es por esta razón que el criterio rector para la resolución de este tipo de controversia debe estar inspirado en la exigencia de todos los requisitos de ley, de suerte que se logre una divulgación completa de la información esencial que debe estar disponible al público antes de la celebración de la subasta. Esta medida garantiza que todo el que esté interesado en dicha subasta tenga la información necesaria para participar efectivamente. Además, asegura que todas las partes tengan la misma información y se evita que solamente los acreedores tengan la información necesaria. Así ocurrió en el caso de autos, donde sólo compareció el acreedor hipotecario.

La omisión de incluir el precio mínimo de remate también tiene el efecto nocivo de desalentar a otras personas a participar en la subasta, socavando la esencia pública de dicho acto.[4] No podemos estar de acuerdo con la opinión mayoritaria que permite el incumplimiento de la ley, bajo el efugio de que en ausencia de daño y haber resultado el remate mayor que lo estipulado en la escritura de hipoteca se cumple así con el espíritu de la ley. Debemos recordar que nuestra función interpretativa no puede ser una que desvirtúe o menosprecie el lenguaje claro so pretexto de cumplir con el espíritu de la ley. Art. 14 del Código Civil, 31 L.P.R.A. sec. 14.[5] Véanse: *Clínica Juliá v. Sec. de Ha-*

---

[4] De la certificación registral que se acompaña en autos surge claramente que dicha propiedad que fue subastada por cuatro mil quinientos cincuenta y cinco dólares con noventa y dos centavos ($4,555.92) tiene un valor en el mercado mucho mayor. Por ejemplo, esa propiedad está gravada con varias hipotecas. Entre éstas, una de treinta y tres mil dólares ($33,000) y otra de cinco mil dólares ($5,000).

[5] "Cuando la ley es clara y libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu."

*cienda*, 76 D.P.R. 509 (1954); *Atiles, Admor. v. Comisión Industrial y Matías*, 77 D.P.R. 16, 20 (1954); *Silva v. Adm. Sistemas de Retiro*, 128 D.P.R. 256 (1991).

Por los fundamentos que anteceden, disentimos. Nos sorprende que ante todas las irregularidades descritas anteriormente, la mayoría de este Tribunal convalide dicho acto público. Confirmaríamos y devolveríamos el caso para que se cumpliera con el mandato específico del Art. 220 de la Ley Hipotecaria y del Registro de la Propiedad de 1979, *supra*.

