JOSÉ D. RODRÍGUEZ MORALES y OTROS, recurrentes, *v.* EL REGISTRADOR DE LA PROPIEDAD, Sección de Barranquitas, recurrido.

*Número:* RG-94-824 *Resuelto:* 29 de enero de 1997

---

*José Davison Lampón*, abogado del recurrente; el Registrador recurrido compareció por escrito.

LA JUEZ ASOCIADA SEÑORA NAVEIRA DE RODÓN emitió la opinión del Tribunal.

I

El 26 de abril de 1991 los esposos Efraín Morales Rivera y Luz Ileana Rodríguez Matos otorgaron la Escritura Núm. 60 sobre hipoteca en Barranquitas, Puerto Rico, ante el notario Carlos E. Berríos Rojas. La referida· hipoteca se constituyó en garantía de pagaré al portador o al tenedor por endoso con vencimiento a la presentación por la suma principal de quince mil dólares ($15,000), intereses al diez por ciento (10%) anual y créditos adicionales de dos mil dólares ($2,000). Fue inscrita al Folio 137 del Tomo 116 de Naranjito. También se incluyó en dicha escritura de constitución de hipoteca un precio de tasación de quince mil dólares ($15,000.00).

El 5 de diciembre de 1991 los esposos José Denis Rodríguez Morales e Irma Teresa Colón del Valle, tenedores del pagaré hipotecario, presentaron ante la Sala de Bayamón del entonces Tribunal Superior de Puerto Rico una demanda en ejecución de la referida hipoteca por la vía ordinaria. El 27 de mayo de 1992 el Registrador de la Propiedad de Puerto Rico, Sección de Barranquitas (en adelante Registrador) expidió una certificación literal de la propiedad sujeta a la hipoteca en cuestión a instancia de la señora Colón del Valle. El Registrador certificó que dicha finca constaba inscrita a favor de los demandados y que estaba sujeta por su procedencia a servidumbre como predio sirviente y a la hipoteca cuya ejecución se solicitaba. Los demandados, Efraín Morales Rivera, Luz Ileana Rodríguez Matos y la sociedad legal de gananciales compuesta por ambos, no comparecieron luego de haber sido debidamente emplazados, razón por la cual se les anotó la rebeldía. El 13 de julio de 1992 el tribunal dictó una sen-

tencia en rebeldía, condenando a los demandados a satisfacer la suma de doce mil ochocientos setenta y cinco dólares ($12,875) de principal, intereses al diez por ciento (10%) anual a partir de 26 de noviembre de 1991 y la suma de dos mil dólares ($2,000) por concepto de honorarios de abogado. La sentencia en rebeldía ordenó la ejecución de la hipoteca, en defecto del pago de las sumas previamente señaladas, fijando el tipo mínimo de la primera subasta en quince mil dólares ($15,000). El 22 de julio de 1992 se archivó en autos una copia de la notificación de la sentencia.

El 24 de febrero de 1993 el tribunal ordenó al Secretario de dicho foro a expedir el mandamiento de ejecución dirigido al alguacil para proceder con la ejecución de la sentencia mediante subasta pública. En la subasta pública, celebrada el 27 de abril de 1993, el Alguacil Manfredo Ramos Rosa anunció como tipo mínimo fijado la suma de doce mil ochocientos setenta y cinco dólares ($12,875). Posteriormente, adjudicó la buena pro por dicha cantidad a los esposos Rodríguez Morales y Colón del Valle, quienes fueron los únicos licitadores.

El 2 de junio de 1993 el Alguacil y los esposos Rodríguez Morales y Colón del Valle otorgaron la Escritura Núm. 3 sobre venta judicial del inmueble adjudicado en subasta pública. El 10 de junio de 1993 se presentó la referida escritura de venta judicial al Asiento 71 del Libro 249 del Diario de Operaciones de la Sección de Barranquitas del Registro de la Propiedad (en adelante Registro). El notario José Davison Lampón reprodujo, mediante fotocopia en esta escritura, el texto del mandamiento de ejecución dirigido al alguacil, apareciendo en este último, a su vez, el texto íntegro de la sentencia en rebeldía.[1] El Registrador

---

[1] Nos provoca una gran preocupación que los notarios estén desarrollando como práctica el incorporar a un instrumento público el texto de algún documento fotocopiándolo, en lugar de transcribirlo en dicho instrumento.

Además, en el caso de autos, surge una contradicción entre el precio de tasación consignado en el párrafo CUARTO de la escritura de venta judicial y el precio de tasación fijado como tipo mínimo en la sentencia fotocopiada en dicha escritura.

notificó el 30 de julio de 1993 las faltas que se detallan a continuación:

1) Debe acreditar los siguientes documentos complementarios y que los mismos estén debidamente certificados por el tribunal en cuestión:
Sentencia "Firme"
Edictos Periódicos, si alguno
Notificación de Sentencia a las partes
Acta de Subasta
Declaración Jurada de Edictos en lugares públicos
Emplazamientos
Mandamiento en Ejecución
Orden
Aviso de Subasta
2) Existe contradicción en el documento presentado. El notario establece la identidad de los otorgantes por medio del Artículo 17(c) de la Ley Notarial sin expresar los medios supletorios utilizados para identificar los mismos. No obstante, al final de dicho documento, el propio notario da fe de conocer los otorgantes sin expresar si dicho conocimiento es personalmente o no; por lo que debe aclarar toda esta situación. (Art. 17(c) Ley Notarial)
3) De la Declaración Jurada respecto del Edicto de Subasta, no surge que se le haya dado cumplimiento a la Regla 51.8 de Procedimiento Civil en lo concerniente al aviso de subasta en la escuela pública del lugar de residencia de los demandados, siendo nula dicha venta. (Regla 51.8 Procedimiento Civil)

El 10 de agosto de 1993 el Lcdo. Carlos E. Berríos Rojas retiró la escritura de venta judicial a petición del presentante Rodríguez Morales.

El 18 de mayo de 1994 se presentó nuevamente la escritura de venta judicial al Asiento 228 del Libro 261 del Diario del Registro. Esta vez, la escritura de venta judicial fue acompañada por el Acta Notarial Núm. 5, aclarando la contradicción en cuanto a la dación de fe notarial sobre el conocimiento de los otorgantes y de los siguientes documentos complementarios certificados: sentencia, edicto del periódico, notificación de sentencia, acta de subasta en-

---

Por lo anterior, remitiremos este caso a la Oficina de Inspección de Notarías (O.I.N.) para la investigación correspondiente y el informe a este Tribunal.

mendada, declaración jurada enmendada, emplazamientos, mandamiento de ejecución, orden y aviso de subasta pública. El 10 de octubre de 1994, habiendo el Registrador calificado los documentos presentados, se notificó la existencia de faltas que impedían el registro:

La sentencia ordena como tipo mínimo para la primera subasta la suma de $15,000.00. El aviso de subasta no contiene el precio mínimo del remate conforme lo dispone el [A]rt. 220, Ley Hipotecaria, 1979, Núm. 198.

El art. 221 de la antes relacionada Ley, dispone en lo pertinente:

"Servirá de tipo para la subasta en este procedimiento el precio en que hayan tasado la finca los contratantes en la escritura de constitución de hipoteca y no se admitirá oferta alguna inferior a dicho tipo."

La tasación conforme surge del Registro en [sic] la suma de $15,000.00 para la primera subasta. La venta se hizo en la primera subasta conforme al Aviso de Subasta Pública y el Acta de Subasta según enmendada, las que expresan como tipo mínimo fijado la suma de $12,875.00, lo que no es correcto.

El precio que los contratantes tasaron la finca para la subasta resulta ser la suma de $15,000.00.

El 20 de octubre de 1994 se presentó un escrito intitulado "Recurso de recalificación de instrumento público y objeción a la segunda calificación del mismo documento". El 26 de octubre de 1994 el Registrador confirmó su calificación original, extendiendo una anotación preventiva sobre el inmueble por el término legal de sesenta (60) días.

Inconformes con la nota denegatoria del Registrador, los recurrentes acudieron oportunamente ante este Foro mediante recurso gubernativo. Los recurrentes plantean que el Registrador venía obligado a incluir en la notificación de 30 de julio de 1993, motivada por un primer asiento de presentación, los defectos señalados en la notificación de 10 de octubre de 1994, a su vez motivada por un segundo asiento de presentación, teniendo el Registrador originalmente ante sí el texto de la sentencia en rebeldía. Fundamentan este planteamiento refiriéndose a la obligación ministerial del Registrador de incluir en la notificación todos

los motivos legales en que se basa su calificación y por los cuales proceda la denegatoria del asiento solicitado. Los recurrentes no incluyeron en su escrito de recalificación alguna argumentación legal en cuanto a la venta judicial del inmueble hipotecado por una suma menor al tipo mínimo fijado para regir la primera subasta pública, a pesar de que las faltas notificadas giran en torno a esta controversia.

En esencia, el presente recurso gubernativo examina el ámbito de la función calificadora del Registrador, particularmente en el contexto de una escritura de venta judicial contentiva de la adjudicación de un inmueble en subasta pública en ejecución de un crédito hipotecario por la vía ordinaria; además, examina la naturaleza del recurso gubernativo.

## II

La función calificadora del Registrador instrumenta el principio de legalidad que gobierna nuestro ordenamiento inmobiliario registral. *P.R. Prod. Credit Assoc. v. Registrador*, 123 D.P.R. 231, 236 (1989); *L. Dershowitz & Co., Inc. v. Registrador*, 105 D.P.R. 267, 273 (1976); R.M. Roca Sastre, *Derecho Hipotecario*, 7ma ed., Barcelona, Ed. Bosch, 1979, T. II, pág. 255. Su finalidad estriba en que "sólo pueden tener acceso al Registro los títulos que reúnan los requisitos establecidos por las leyes. De otro modo —decía don Jerónimo GONZÁLEZ— los asientos sólo servirían para engañar al público, favorecer el tráfico ilícito, y provocar nuevos litigios". J.L. Lacruz Berdejo y F. Sancho Rebullida, *Derecho Inmobiliario Registral*, Barcelona, Librería Bosch, 1977, pág. 354. Véase, además, Roca Sastre, *op. cit.* En resumen, "[l]a calificación registral es la 'facultad por excelencia del Registrador que al ejercitarla realiza el propósito' de que al Registro s[o]lamente tienen acceso los títulos que sean 'válidos y perfectos' ". *Ramírez Lebrón*

*v. Registrador*, 131 D.P.R. 76, 81 (1992). Véanse: *Kogan v. Registrador*, 125 D.P.R. 636, 674 (1990); *U.S.I. Properties, Inc. v. Registrador*, 124 D.P.R. 448, 465 (1989); *P.R. Prod. Credit Assoc. v. Registrador*, supra; *.L. Dershowitz & Co., Inc. v. Registrador*, supra. Ulteriormente, la calificación persigue sólo extender o denegar la inscripción, anotación, nota o cancelación de los documentos presentados ante la consideración del Registrador, 30 L.P.R.A. sec. 2270, ya que la función calificadora del Registrador tan sólo goza de la naturaleza de los actos de jurisdicción voluntaria; es decir, de aquellos actos no contenciosos. *U.S.I. Properties, Inc. v. Registrador*, supra, pág. 465; *L. Dershowitz & Co., Inc. v. Registrador*, supra.

La Ley Hipotecaria y del Registro de la Propiedad (Ley Hipotecaria) exige al Registrador que, en el ejercicio de su función calificadora, notifique por escrito todas las faltas que surjan del título presentado. El Art. 69 de esta ley, 30 L.P.R.A. sec. 2272, rige en cuanto al contenido, el procedimiento y la notificación de la calificación al disponer lo siguiente:

> Si el Registrador observare alguna falta en el documento conforme la sec. 2271 de este título, notificará su calificación por escrito al presentante y al notario autorizante, si así se pidiere en el asiento de presentación, dentro de sesenta (60) días de la fecha de *dicho asiento de presentación*, bien por entrega personal o por correo, *para que corrijan la falta durante el plazo de sesenta (60) días a partir de la fecha de la notificación. Si se hiciere más de una notificación, se comenzará a contar el plazo desde la última.*
>
> *La notificación deberá contener todos los motivos legales en que se basa la calificación.* La notificación se hará constar por nota fechada en el asiento de presentación y al pie del documento notificado, firmando dicha nota el Registrador, cumplido lo cual quedará perfeccionada.
>
> *De no ser subsanado el defecto y expirado el plazo de sesenta (60) días, el Registrador extenderá nota de caducidad en el asiento de presentación y al pie del documento.* Cuando los derechos pagados a la presentación del documento cuya notificación haya caducado no excediere de doscientos dólares ($200) el registrador cancelará veinticinco dólares ($25); cuando los de-

rechos pagados a la presentación excedieren de doscientos dólares ($200) el registrador cancelará cincuenta dólares ($50). (Énfasis suplido.)

■ Este articulado faculta al Registrador a efectuar más de una notificación sobre la calificación del título presentado, siempre que se efectúe dentro del término de sesenta (60) días contados a partir de la última notificación; es decir, mientras no haya caducado el asiento de presentación (30 L.P.R.A. sec. 2255). En estos casos será preciso incluir en la última notificación una enumeración de las nuevas faltas, además de las faltas previamente señaladas (30 L.P.R.A. secs. 2003–81.2, 2003–81.9 y 2003–81.10, edición especial). *U.S.I. Properties, Inc. v. Registrador*, supra, págs. 457–458. Esta posibilidad de efectuar varias notificaciones surge en el contexto de un mismo asiento de presentación.

■ En ocasiones las faltas notificadas se corrigen mientras está vigente el asiento de presentación. Sin embargo, ocurre que en otras ocasiones las faltas notificadas se corrigen una vez caducado el asiento de presentación, en cuyo caso la nueva presentación del documento surtirá sus efectos desde la fecha del nuevo asiento (30 L.P.R.A. sec. 2275). El nuevo asiento de presentación dará comienzo al trámite registral y corresponderá al Registrador calificar el documento presentado para determinar la corrección de las faltas notificadas motivadas por el primer asiento de presentación (30 L.P.R.A. sec. 2255).

Se reitera en el párrafo quinto del Art. 77 de la Ley Hipotecaria, según enmendada el 14 de junio de 1980 (30 L.P.R.A. sec. 2280), la obligación del Registrador de incluir en su calificación todas las faltas que surjen del título presentado. Tanto es así, que declara este artículo, en lo pertinente:

*... Es obligación del registrador incluir en la calificación todos los motivos por los cuales proceda la denegatoria del asiento solicitado. Si así no lo hubiere hecho y se presentare de nuevo el*

*documento* o se acordare su inscripción en el recurso guberna-
tivo correspondiente, *podrá alegar defectos no comprendidos en
la calificación anterior; pero en tal supuesto podrá ser corregido
disciplinariamente, si procediere, según las circunstancias del
caso.* (Énfasis suplido.) 30 L.P.R.A. sec. 2280.

█ El lenguaje del articulado faculta al Registrador a
formular las faltas que, como resultado de una calificación
previa de un título, fueron omitidas en caso de presentarse
nuevamente dicho título, sujeto a la imposición de las co-
rrespondientes sanciones disciplinarias. Surge del histo-
rial legislativo el propósito de que el Registrador pueda
recalificar, pues "[n]o debe un Registrador efectuar una
inscripción nula por el hecho de haber omitido el señala-
miento de una falta en la calificación ...". XXXIV (Núm. 36)
Diario de Sesiones de la Asamblea Legislativa (Senado),
597 (1980).

█ En cuanto a la denegatoria del asiento solicitado,
sólo procederá si concurren alguna de las faltas que impi-
den el registro del título presentado. Se consideran faltas
que impiden el registro de un título presentado las enume-
radas en el Art. 68 de la Ley Hipotecaria, 30 L.P.R.A. sec.
2271: (1) las que causan la inexistencia del acto o contrato
a registrarse, o la nulidad o anulabilidad de éste o del do-
cumento presentado; (2) las que se originan de obstáculos
del Registro de la Propiedad; (3) las que se fundan en dis-
posiciones del subtítulo, y (4) el no presentar los documen-
tos complementarios necesarios o no acreditarse el cumpli-
miento de las formalidades exigidas por las leyes.

█ Cobra importancia la solicitud del Registrador
para la producción de documentos complementarios
cuando éstos resultan necesarios para la realización de
una adecuada calificación, tratándose de un deber del Re-
gistrador el solicitarlos. *Mojica Sandoz v. Bayamón Fede-
ral Savs.*, 117 D.P.R. 110, 128–129 (1986). Esta solicitud se
puede extender tanto a la producción de documentos nota-
riales como a la de documentos judiciales o adminis-

trativos. Art. 64 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2267; *Mojica Sandoz v. Bayamón Federal Savs.*, supra, pág. 127. Sin embargo, "[l]a facultad de todo Registrador para solicitar documentos complementarios no supone la realización de indiscriminadas expediciones de pesca. El documento debe ser de tal naturaleza o contener la información que razonablemente pueda ayudarlo a realizar la más diligente y acertada calificación". *U.S.I. Properties, Inc. v. Registrador*, supra, pág. 464. Más aún, la facultad del Registrador para solicitar la producción de documentos complementarios se limita a estas tres (3) situaciones: (*a*) cuando por ley o por reglamento así se requiera para la inscripción de un documento; (*b*) cuando del documento presentado al Registrador surja causa para creer que pueda ser inválido, y (*c*) cuando el propio documento no refleje su entera validez. *Pino Development Corp. v. Registrador*, 133 D.P.R. 373 (1993); *Ríos Román v. Registrador*, 130 D.P.R. 817 (1992); *U.S.I. Properties, Inc. v. Registrador*, supra, pág. 462; *Mojica Sandoz v. Bayamón Federal Savs.*, supra, pág. 129. La finalidad de estos documentos es complementar aquellos aspectos necesarios para hacer viable la inscripción del documento principal. *Ríos Román v. Registrador,* supra. Se entiende por título aquel documento público en que se funda inmediatamente el derecho de la persona a cuyo favor habrá de practicarse la inscripción (30 L.P.R.A. sec. 2206).

Originalmente, el Art. 116.2 del Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad (Reglamento Hipotecario), según aprobado el 8 de julio de 1980 (30 L.P.R.A. sec. 2003-116.2, edición especial), requería incluir en la escritura de venta judicial una transcripción de la sentencia, la orden de ejecución, el edicto y el acta de subasta, o acompañar a esta escritura las copias certificadas de los mencionados documentos. A estos efectos, proveía:

En cualquier caso de venta judicial será título suficiente para

inscribir el bien inmueble objeto de la anotación preventiva a favor del adjudicatario la escritura de venta judicial.

*En la escritura de venta judicial se transcribirán la sentencia, orden de ejecución, edicto y acta de subasta o se acompañarán copias certificadas de estos documentos como complementarios.*

En los casos de ejecución de hipoteca, de los documentos presentados quedará debidamente identificada la hipoteca que se ejecuta. (Énfasis suplido.) 30 L.P.R.A. sec. 2003-116.2, edición especial.

El 22 de agosto de 1992 se aprobaron enmiendas sustanciales al Art. 116.2 del Reglamento Hipotecario, *supra*. Las enmiendas, vigentes desde el 1ro de octubre de 1992, no incluyeron el requisito de la aludida transcripción de documentos en la escritura de venta judicial. En sustitución, se requirió la presentación de estos documentos complementarios certificados para el registro. Actualmente permanecen en vigor las enmiendas al Art. 116.2, cuyo texto se transcribe a continuación:

La escritura de venta judicial será título suficiente para inscribir el bien inmueble objeto de la anotación preventiva a favor del adjudicatario en cualquier caso de venta judicial.

Sin menoscabo de lo dispuesto en la Ley Notarial, *en todo caso las escrituras de venta judicial deberán estar acompañadas de los siguientes documentos debidamente certificados por el Secretario del Tribunal*:

(1) *La sentencia,*
(2) *orden,*
(3) *mandamiento de ejecución,*
(4) *edicto,*
(5) *acta de subasta,*
(6) *cualesquiera otros que el Registrado[r] estime necesarios para la debida calificación del documento.*

En los casos de ejecución de hipoteca, de los documentos judiciales presentados quedará debidamente identificada la hipoteca que se ejecuta. (Énfasis suplido.) R.G. Sec. 116.2 del Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad, edición especial de 1996.

La delimitación del ámbito de la calificación está consagrada en el Art. 64 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2267, distinguiendo entre la calificación de documen-

tos notariales, judiciales y administrativos. La escritura pública de venta judicial no se considera un documento expedido por autoridad judicial. El carácter oficial de la comparecencia del alguacil al otorgamiento de la escritura no es suficiente para adscribirle a ésta la cualidad de documento judicial. *Atanacia Corp. v. J.M. Saldaña, Inc.*, 133 D.P.R. 284 (1993); *C.R.U.V. v. Registrador*, 117 D.P.R. 662, 668 (1986). El Registrador calificará la escritura pública de venta judicial dentro del ámbito de la calificación de los documentos notariales.

La extensión de la calificación varía con relación al tipo de documentos ante la consideración del Registrador. La calificación de los documentos notariales comprenderá: (1) las formas extrínsecas de los documentos presentados; (2) la capacidad de los otorgantes, y (3) la validez de los actos y contratos contenidos en los documentos. El Registrador habrá de fundamentar la referida calificación, basándose en los documentos presentados, en los asientos registrales vigentes y en las leyes (30 L.P.R.A. sec. 2267).

Ahora bien, la calificación de documentos notariales avalados por un trámite judicial le impone al Registrador una mayor prudencia y limitación en el ámbito de su función calificadora. *U.S.I. Properties, Inc. v. Registrador*, supra, pág. 463. Esta manifestación se hizo en el contexto de la calificación de una escritura de segregación y permuta que recogía un negocio producto de la transacción judicial habida en un pleito. Una mayor prudencia y limitación en el ámbito de la calificación de documentos avalados por un trámite judicial pretende evitar la intromisión del Registrador en asuntos que corresponde evaluar únicamente a los tribunales. *U.S.I. Properties, Inc. v. Registrador*, supra.

██ La calificación registral, en casos como el que ahora tenemos ante nuestra consideración, comprende el examinar la validez de la venta de un inmueble en subasta pública al ejecutarse una hipoteca por la vía ordinaria. El Registrador calificará la escritura de venta judicial observando, entre otras, las disposiciones contenidas en la Ley Hipotecaria sobre ejecuciones de hipotecas (30 L.P.R.A. sec. 2267).

██ El Art. 179 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2575, fija uno de los requisitos para la constitución de la hipoteca. Así pues, cataloga el precio de tasación en la escritura de constitución de hipoteca como indispensable para la tramitación de la ejecución de una hipoteca, tanto por la vía ejecutiva sumaria como por la vía ordinaria. El Art. 221 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2721, ilustra la necesidad de que se incluya el precio de tasación en la escritura de constitución de hipoteca, al establecer:

La subasta se celebrará el día, hora y sitio indicado en el edicto, ante el alguacil que actúe ante la Sala del Tribunal Superior que entienda en el procedimiento *sin que le sea lícito a este funcionario desviarse de los términos y condiciones de subasta señalados por el tribunal en su orden de venta.*

*Servirá de tipo para la subasta en este procedimiento el precio en que hayan tasado la finca los contratantes en la escritura de constitución de hipoteca y no se admitirá oferta alguna inferior a dicho tipo.* Si no produjere remate ni adjudicación la primera subasta, en la segunda que se celebrare servirá de tipo las dos terceras (2/3) partes del precio pactado. Si tampoco hubiere remate ni adjudicación en la segunda subasta, regirá como tipo de la tercera subasta la mitad del precio pactado.

Si se declarase desierta la tercera subasta se dará por terminado el procedimiento, pudiendo adjudicarse al acreedor la finca dentro de los diez (10) días siguientes, si así lo estimare conveniente, por la totalidad de la cantidad adeudada si ésta fuere igual o menor que el monto del tipo de la tercera subasta, y abonándose dicho monto a la cantidad adeudada si ésta fuere mayor. *Todas las subastas deberán ser acordadas por el tribunal y celebradas según lo antes prevenido.* (Énfasis suplido.)

■ Durante algún tiempo, el precio de tasación pactado en la escritura de constitución de hipoteca se utilizó como tipo mínimo únicamente para la ejecución de créditos hipotecarios por la vía sumaria. Esta situación fue modificada al interpretarse que el fiel cumplimiento del mandato legislativo requiere la previa tasación acordada por las partes en la escritura de hipoteca para servir de tipo mínimo en toda subasta de un inmueble, irrespectivo de la vía que elija el acreedor ejecutante. *Ponce Federal Savings v. Gómez*, 108 D.P.R. 585, 590 (1979). Esta norma tendría un efecto prospectivo, aplicándose a los procedimientos de ejecución de hipoteca por la vía ordinaria que se iniciasen a partir del 28 de marzo de 1979. *Fed. Nat'l Mortg. Assoc. v. Registrador*, 112 D.P.R. 242, 243 (1982); *Ponce Federal Savings v. Gómez*, supra, págs. 591–592. En la actualidad, el precio de tasación que rige como tipo mínimo para la celebración de la primera subasta pública en la ejecución de un crédito hipotecario, independientemente de la vía ejecutiva que hayan seleccionado los acreedores, opera por disposición expresa de la Ley Hipotecaria, 30 L.P.R.A. secs. 2701 y 2721.

■ La vía judicial ordinaria para el cobro de créditos hipotecarios se rige por las Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. III, y determinadas secciones de la Ley Hipotecaria, 30 L.P.R.A. sec. 2701. Claramente, el Art. 221 de la Ley Hipotecaria, *supra*, aplicable al procedimiento ejecutorio ordinario, hace imperativo que sirva como tipo mínimo en la primera subasta el precio en que hayan tasado la finca los contratantes en la escritura sobre constitución de hipoteca, a la vez que prohíbe terminantemente cualquier postura inferior al precio de tasación pactado para la primera subasta. También señala que no le será lícito al alguacil desviarse de los términos y las condiciones contenidos en la orden de venta expedida por el tribunal para la celebración de la subasta pública. La Regla 51.3(b)

de Procedimiento Civil, 32 L.P.R.A. Ap. III, provee en cuanto a la orden de venta:

(b) En las sentencias que se dicten en juicios sobre ejecución de hipotecas y otros gravámenes se ordenará que el demandante recupere su crédito, intereses y costas mediante venta de la finca sujeta al gravamen. *Al efecto, se expedirá una orden al alguacil, disponiendo que proceda a venderla para satisfacer la sentencia, en la forma prescrita por la ley para la venta de propiedad bajo ejecución y si no se encontrase la finca hipotecada o si el resultado de su venta fuese insuficiente para satisfacer la totalidad de la sentencia, entonces el alguacil procederá a recuperar el resto del dinero o remanente del importe de la sentencia sobre cualquier otra propiedad del demandado, como en el caso de cualquiera otra ejecución ordinaria.* (Énfasis suplido.)

Si al calificar la escritura de venta judicial el Registrador deniega el asiento solicitado, por surgir del documento alguna causa para creer que pueda ser inválido, aquel interesado en recurrir contra la denegatoria final de inscripción del título presentado podrá acudir vía recurso gubernativo ante el Tribunal Supremo de Puerto Rico. El interesado tendrá que cumplir con la previa presentación de un escrito de recalificación ante el Registrador (30 L.P.R.A. secs. 2273 y 2279). El Art. 65 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2268, provee que:

El registrador tendrá autonomía en su facultad calificadora y *contra su calificación solamente procederá el recurso que se establece en las secciones que siguen,* sin que los tribunales u otras autoridades puedan en distinta forma obligar o impedir a los registradores a que practiquen cualquier operación registral.
*Los interesados podrán ventilar entre sí y en juicio ordinario cuanto concierne a la validez de los documentos sujetos a registro* y obtener de acuerdo con el inciso primero de la sec. 2401 de este título, la correspondiente anotación preventiva en aseguramiento de la demanda que establezca. (Énfasis suplido.)

El recurso gubernativo participa de la naturaleza de los actos de jurisdicción voluntaria, teniendo por objeto el resolver si existen o no los defectos notificados por

el Registrador, con la única finalidad de que se declare inscribible dicho título o que se deniegue su inscripción. Roca Sastre, *op. cit.*, pág. 312. Al entender en un recurso gubernativo, "[e]l Tribunal Supremo resolverá lo que estime ajustado a derecho y, en su consecuencia, decidirá si confirma o revoca la calificación del registrador". 30 L.P.R.A. sec. 2281.

Roca Sastre explica:

> La *naturaleza jurídica* del recurso gubernativo contra la calificación del Registrador es una cuestión bastante discutida, pero debe considerarse que participa de la misma naturaleza de la calificación, de la cual es una simple incidencia. *Por tanto, tiene el carácter propio de los actos de jurisdicción voluntaria. No tiene naturaleza judicial contenciosa, porque en él no hay contienda "inter partes".* (Énfasis suplido y en el original.) Roca Sastre, *op. cit.*, pág. 312.

 Es por esto que el recurrir al Tribunal Supremo mediante recurso gubernativo opera sin perjuicio del recurso apropiado que puedan incoar las partes interesadas para contender la validez de los documentos sujetos a registro. La acción de nulidad del proceso de subasta y de venta judicial es el recurso apropiado para contender su validez, al permitir participar en un procedimiento contencioso a todas las partes interesadas y al salvaguardar sus derechos a un debido proceso de ley. Corresponderá al Tribunal Supremo confirmar o revocar la nota denegatoria del Registrador, obedeciendo así a la naturaleza no contenciosa del recurso gubernativo, en el cual tampoco participan de ordinario todas las partes interesadas.

## III

 El Registrador no incumplió su obligación ministerial de notificar todos los motivos legales en que basó su calificación de 30 de julio de 1993, motivada en un primer asiento de presentación. Todo lo contrario, actuó conforme

con sus obligaciones al denegar la inscripción de la escritura de venta judicial sujeto, entre otras cosas, a la presentación de documentos complementarios en conformidad con la expresa exigencia contenida en el Art. 116.2 del Reglamento Hipotecario, *supra*. Dicho artículo requiere que todas las escrituras de venta judicial estén acompañadas de los siguientes documentos complementarios certificados: sentencia, orden, mandamiento de ejecución, edicto, acta de subasta y cualesquiera otros necesarios. Así las cosas, el Registrador venía obligado a solicitar la producción de los documentos complementarios certificados, entre estos la sentencia, al no poder realizar una adecuada calificación sin tomarlos en consideración. Esta exigencia del Art. 116.2, *supra*, impedía que el Registrador considerara el texto de la sentencia reproducido en la escritura de venta judicial al calificar dicho título.

Tampoco el Registrador incumplió con su obligación ministerial de notificar todos los motivos legales en que basó su calificación de 10 de octubre de 1994, motivada en un segundo asiento de presentación. Esta notificación del Registrador incluyó todos los motivos legales en que basó su calificación, fundamentándose en la sentencia certificada que fijó el tipo mínimo de la subasta en quince mil dólares ($15,000) en el precio de tasación que aparece en el asiento registral de la hipoteca y en el Art. 221 de la Ley Hipotecaria, *supra*. La sentencia certificada presentada que acompañó la escritura de venta judicial acredita fehacientemente el tipo mínimo fijado para la celebración de la subasta pública. Era indispensable que el Registrador considerara esta sentencia para evaluar la validez del título presentado. Una vez consideradas conjuntamente la escritura de venta judicial, la sentencia certificada y el vigente asiento registral de la hipoteca, surge claramente que el alguacil celebró la subasta pública violando el tipo mínimo fijado para la primera subasta, según lo requerido por el Art. 221 de la Ley Hipotecaria, *supra*.

Es improcedente la aplicación del Art. 77 de la Ley Hipotecaria, *supra*, al estimar correctas las notificaciones efectuadas por el Registrador; notificaciones de 30 de julio de 1993 y de 10 de octubre de 1994. Este articulado confiere la facultad de recalificar el título, objeto de un nuevo asiento de presentación, existiendo omisiones en la calificación de éste como parte de un anterior asiento de presentación, aunque sujeto a la imposición de sanciones disciplinarias. Esta no es la situación ante nuestra consideración. El Registrador notificó correctamente bajo los distintos asientos de presentación y, por ende, no incurrió en omisiones, haciendo así inaplicable la imposición de sanciones disciplinarias.

La sentencia en rebeldía dictada por el entonces Tribunal Superior fijó el tipo mínimo para la primera subasta en quince mil dólares ($15,000), siendo éste el precio de tasación pactado en la escritura sobre constitución de hipoteca. No obstante, en el procedimiento post sentencia el alguacil se desvió de los términos y las condiciones de la subasta señalados en la sentencia, la cual se incorporó por referencia a la orden de venta dirigida a éste. El Registrador actuó correctamente y dentro del límite de su función calificadora al denegar la inscripción de la escritura de venta judicial, pues el inmueble en ejecución se adjudicó por una suma inferior al tipo mínimo fijado para la primera subasta.[2]

Por los fundamentos expuestos en la opinión que antecede, *se dictará sentencia confirmando la nota denegatoria del Registrador.*

---

[2] Por no estar planteado en el recurso gubernativo ante nuestra consideración, no pasamos juicio sobre cuál sería el ámbito de la función calificadora del Registrador si lo acontecido en el proceso de subasta y venta judicial hubiera ocurrido en el contexto de la ejecución de un crédito hipotecario por la vía sumaria y el tribunal hubiera dictado una orden para confirmar la adjudicación o venta de los bienes hipotecados conforme el Art. 225 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2725.