El Juez Asociado Señor Feliberti Cintrón
emitió opinión del Tribunal.
Se nos presenta, a través de este recurso, la interro-gante de si es necesario fijar un precio mínimo para la venta de una propiedad inmueble en subasta pública pro-ducto de un trámite ordinario de cobro de dinero, sin que medie una garantía hipotecaria. Igualmente, consideramos los límites al derecho de un acreedor de continuar sus ges-tiones de cobro por sentencia, luego de que adveniera dueño de una propiedad del deudor a través del procedi-miento de ejecución de sentencia cuando el valor de ésta excede lo pagado por el acreedor en la licitación.
I
En noviembre de 2002 el Tribunal de Primera Instancia dictó Sentencia declarando “ha lugar” una demanda por impericia médica instada por los recurridos, Arkel Ramón Sánchez Torres (señor Sánchez), su esposa, Lourdes López Torres (señora López), y la Sociedad Legal de Gananciales constituida entre ambos, contra los peticionarios, Luis G. *507 Valentín Méndez, su esposa, María T. Márquez Salazar, y la Sociedad Legal de Gananciales compuesta por ambos. Conforme al referido dictamen, se conferió a la señora Ló-pez una partida en daños ascendente a $500,000, así como $150,000 al señor Sánchez. Asimismo, se concedió a los re-curridos $162,500 en concepto de honorarios de abogado, puesto que el juzgador entendió que la parte peticionaria había actuado con temeridad durante los procedimientos. En desacuerdo, los peticionarios acudieron en alzada ante el Tribunal de Apelaciones.
Entre tanto, a solicitud de la parte recurrida, el tribunal de instancia emitió una orden de anotación de embargo sobre la residencia principal de los peticionarios. Ello para asegurar el cobro de la referida Sentencia en la eventuali-dad de que ésta fuera confirmada en alzada.
Mediante un dictamen de 22 de junio de 2004, el foro apelativo intermedio confirmó la Sentencia apelada, pero redujo las cantidades otorgadas por el tribunal de instan-cia a los recurridos de la manera siguiente: $250,000 para la señora López y $75,000 para el señor Sánchez. De igual forma, eliminó la partida de honorarios de abogado.
Posteriormente, y a solicitud de la parte recurrida, el tribunal de instancia dictó una Orden de Ejecución de Sentencia. La subasta correspondiente a la residencia de los peticionarios se realizó el 2 de agosto de 2005. Dos días más tarde, el alguacil presentó ante el tribunal un Acta de Subasta, donde hizo constar que se le adjudicó la buena pro a los recurridos, como únicos licitadores, luego que és-tos ofrecieran $50,000 de la Sentencia a su favor. El 22 de agosto de 2005 dicha parte tomó posesión del inmueble.
Transcurridos dos años desde la subasta, y luego de la venta de la propiedad en cuestión a unos terceros(1) los recurridos acudieron al tribunal de instancia al amparo de *508 la Regla 51.4 de Procedimiento Civil de 1979,(2) 32 L.P.R.A. Ap. III, solicitando que se ordenara a los peticionarios su comparecencia a una toma de deposición, con el propósito de identificar bienes adicionales suyos que satisficieran el balance adeudado en virtud de la aludida Sentencia. Como fundamento para ello, alegaron haber cobrado únicamente los $50,000 ofrecidos por los recurridos en la subasta.
Los peticionarios, por su parte, adujeron que la adjudi-cación del inmueble a favor de los recurridos tuvo el efecto de satisfacer la Sentencia en su totalidad. A tales efectos, sometieron una tasación de la propiedad que reflejó un valor de $475,000 al 2 de septiembre de 2003.
El 6 de febrero de 2008 el foro de instancia emitió una Resolución, disponiendo que la cuantía a ser aplicada a la deuda por sentencia fuera el valor del inmueble en el mer-cado a la fecha de la subasta, luego de deducidas las cargas hipotecarias que le afectaban; es decir, su valor neto {equity). Estableció un plazo para que las partes se reunie-ran y acordaran cuál sería dicha cantidad o, de lo contra-rio, evidenciaran a cuánto ascendía el equity de la propie-dad al 2 de agosto de 2005.
Insatisfecha, la parte recurrida acudió ante el Tribunal de Apelaciones mediante un recurso de certiorari. Luego de expedir el auto solicitado, dicho foro revocó al tribunal pri-mario y determinó que el valor del inmueble, para efectos de la deuda por sentencia, “es el valor por el cual se adqui-rió el inmueble” en la subasta. Indicó, además, que ni el derecho sustantivo ni el procesal requieren que se le fije un precio mínimo a una propiedad a ser subastada en un pro-cedimiento de venta judicial en ejecución de sentencia, por lo que la propiedad debía ser vendida, como en efecto lo fue, al mejor postor.
Es entonces que la parte peticionaria acude ante nos por *509 medio del presente recurso señalando la comisión de los siguientes dos errores:
Erró el Honorable Tribunal de Apelaciones al concluir que el derecho sustantivo y procesal en un trámite de ejecución de sentencia en un procedimiento ordinario por cobro de dinero, sin garantía hipotecaria, mediante la subasta de un inmueble, no se requiere un precio mínimo.
Erró el Honorable Tribunal de Apelaciones al determinar que no se extinguió la cuantía dispuesta en la sentencia, provo-cando la subsistencia de una deuda artificial. Petición de cer-tiorari y alegato, pág. 6.
Mediante Resolución, le concedimos un término a la parte recurrida para expresar su posición respecto al re-curso presentado. Habiendo comparecido, resolvemos.
II
Conforme los planteamientos esbozados, nos toca resolver primeramente si, al igual que en las ventas judiciales en virtud de una ejecución de hipoteca, se requiere la fija-ción de un precio que sirva de tipo mínimo para la subasta de un inmueble en un procedimiento de ejecución de sentencia.
Los peticionarios nos invitan a extender el requisito de justiprecio al proceso de ejecución de sentencia no vincu-lado a garantías hipotecarias. Apuntan a las graves injus-ticias que se suscitan al venderse propiedades sin que me-die un precio mínimo, lo cual permite que el deudor sea desprovisto de su propiedad por cantidades que no guar-dan relación con el valor real del inmueble. Aunque concor-damos con la problemática que plantea la parte peticiona-ria en este recurso, no existe base en derecho para implementar lo que nos pide.
La ejecución de hipoteca por la vía ordinaria se rige por las disposiciones de las Reglas de Procedimiento Civil —Regla 51.3 et seq., 32 L.P.R.A. Ap. III— así como *510 aquellos preceptos de la Ley Hipotecaria y del Registro de la Propiedad de 1979 (Ley Hipotecaria) que aplican por decreto expreso del legislador. (3) BL Investment v. Registrador, 173 D.P.R. 833 (2008); Rodríguez Morales v. Registrador, 142 D.P.R. 347 (1997); Arroyo v. Ortiz y Franco, 133 D.P.R. 62 (1993).
La norma atinente al tipo mínimo como requisito a una subasta válida, según reconocida inicialmente en Ponce Federal Savings v. Gómez, 108 D.P.R. 585 (1979), y reiterada posteriormente en Coop. Ahorro y Créd. v. Registrador, 142 D.P.R. 369 (1997); Rodríguez Morales v. Registrador, supra; Arroyo v. Ortiz y Franco, supra, y Junta Retiro Maestros v. Registrador, 109 D.P.R. 569 (1980), está predicada exclusivamente en principios de derecho hipotecario. Es en Ponce Federal Savings v. Gómez, supra, donde, luego de trazar el historial legislativo atinente a los requisitos cons-titutivos de la hipoteca, conjuntamente con los procesos relativos a su ejecución, expresamente reconocimos que, al igual que en el procedimiento ejecutivo sumario, el precio de tasación pactado por las partes en la escritura de cons-titución de hipoteca configura el precio mínimo para el re-mate en un procedimiento ordinario.
En la actualidad, esta normativa se encuentra plas-mada en el Artículo 179 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2575, que consigna explícitamente el precio de tasa-ción como requisito ineludible para la validez de la escri-tura de hipoteca. Se precisa también que este precio ser-virá de tipo mínimo en la primera subasta, tanto en el procedimiento de ejecución sumario como en el ordinario.(4)
*511 Igualmente, el Artículo 221 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2721,(5) dispone que la tasación acordada en la escritura de constitución de hipoteca servirá de tipo mínimo para la primera subasta. En la eventualidad de que esa primera subasta se declare “desierta”, el tipo mínimo para la segunda será dos terceras partes del precio pactado; si aun así no comparece un licitador, se utilizará la mitad del precio pactado como precio mínimo para la tercera subasta. íd.
Análogo al planteamiento que nos presenta la parte pe-ticionaria en su recurso, los abusos causados por la falta de justiprecio en las ejecuciones de hipoteca ocasionó que se adjudicaran mediante este trámite propiedades por canti-dades irrisorias. Esa práctica operaba en detrimento de los deudores, puesto que no solamente perdían sus propieda-des en el remate, sino que las deudas correspondientes continuaban en vigor aun luego de concluido el proceso de venta.
La siguiente expresión resume la situación que se pre-tendió atender mediante la implementación del precio mí-nimo:
Nótese que el propósito perseguido al requerir el estableci-miento de dicho tipo mínimo fue precisamente el de “cerrar la puerta a la grave injusticia que representa la adquisición por el acreedor de la finca hipotecada mediante oferta en subasta de parte del crédito adeudado, adjudicándose el inmueble por precio irrisorio y libre para perseguir otros bienes de su deu-dor por el balance impagado de su crédito”. Coop. Ahorro y Créd. v. Registrador, supra, pág. 379. Véanse: Arroyo v. Ortiz y *512 Franco, supra; Junta Retiro Maestros v. Registrador, supra; Ponce Federal Savings v. Gómez, supra.
A pesar de los inconvenientes que surgen por la falta de justiprecio, según aludidos por la parte peticionaria, nos vemos impedidos de atender la problemática atinente a las ventas judiciales que no responden a créditos hipotecarios con respuestas fundamentadas estrictamente en un man-dato legislativo en el ámbito hipotecario. Contrario a los hechos presentes en los casos antes citados, en este recurso no media una hipoteca. Más bien, la acción versa sobre la ejecución de una propiedad de los peticionarios para satis-facer las sumas conferidas a los recurridos por sus daños personales. Entendemos, por lo tanto, que los rigores de la Ley Hipotecaria, en específico el requisito de un tipo mí-nimo para subasta, no aplican.
Sin embargo, según explicamos más adelante, no por ello quedan totalmente desprovistos de protección los deu-dores quienes, en virtud de una sentencia decretada en su contra, ven sus bienes rematados para satisfacer las obli-gaciones allí consignadas.
A base de lo anterior, resolvemos que no incidió el Tribunal de Apelaciones en lo atinente al primer señala-miento de error.
III
A. Validez del precio de venta en subasta
Procedemos entonces a discutir las pautas que rigen los procedimientos de ejecución de sentencia como el que hoy nos ocupa. Como advertimos anteriormente, es claro que las normas que operan en el ámbito del derecho hipoteca-rio no aplican a los hechos de este caso, específicamente lo atinente al precio mínimo, puesto que no les concierne ga-rantía hipotecaria alguna.
La Regla 51.8 de Procedimiento Civil de 1979 (32 *513 L.P.R.A. Ap. III) atiende lo relativo a las ventas judiciales. Ésta provee, en lo pertinente, lo siguiente:
(b) Manera de hacer la venta. — La venta judicial de bienes en cumplimiento de una orden de ejecución, deberá hacerse por subasta al mejor postor .... Una vez que se hubieren ven-dido bienes suficientes para cumplir la orden de ejecución, no podrán venderse bienes adicionales ....
(d) Acta de subasta y entrega de bienes. — Verificada la venta, el oficial a cargo de la misma levantará un acta por escrito describiendo lo acontecido durante la subasta y la adjudica-ción de venta al mejor postor, quien pagará el importe de la venta en dinero efectivo o en cheque certificado a la orden del oficial en cuestión. En casos extraordinarios, el tribunal podrá ordenar cualquier otra forma de pago .... En caso de venta de propiedad inmueble, el oficial encargado de la venta otorgará escritura pública a favor del comprador ante el notario que este último seleccione, abonando éste el importe de tal escritura. (Énfasis nuestro). 32 L.P.R.A. Ap. III (ed. 2001).
Según surge de su propio texto, en lo que respecta al precio de venta, solo se dispone para que la propiedad a ser subastada se le adjudique al mejor postor. No se requiere la fijación de un precio que sirva de tipo mínimo para la subasta ni se establece un mecanismo para calcular su valor. No obstante, ello no significa que un licitador puede ofrecer cualquier suma por irrisoria que parezca. Si la transferencia se realiza a cambio de una cantidad sumamente baja, la venta podría resultar nula. A esos efectos, hemos dictaminado que “para que una venta en ejecución de sentencia sea nula, el precio pagado en ella debe ser tan exageradamente inadecuado que cree una presunción de fraude”. Ramery Vélez v. Banco Popular, 90 D.P.R. 274, 280 (1964). Véanse, además: Figueroa v. Banco de San Juan, 108 D.P.R. 680, 692 (1979); García v. Humacao Fruit Co., 25 D.P.R. 682, 689 (1917). Se establecen de este modo unos límites al precio que el encargado de conducir la subasta, de ordinario el alguacil del tribunal, puede aceptar de un licitador para que se le adjudique el bien subastado.
*514 Conforme la naturaleza particular del procedimiento de ejecución de sentencia existen, además del monto licitado, otros factores que inciden en la determinación de si resulta o no adecuado el precio pagado. Sobre este particular, hemos reconocido que el valor de una propiedad obligatoriamente se afecta al disponerse de ella a través del mecanismo forzado de subasta pública. Según indicado:
Si tomamos en cuenta que no se trata de una venta volunta-ria, sino forzada, en la que el precio razonable debe determi-narse, no en relación con el valor del inmueble en el mercado, sino con respecto a lo que se puede obtener en una subasta pública, es forzoso concluir que no se ha establecido controver-sia alguna de fraude por precio inadecuado. Figueroa v. Banco de San Juan, supra, pág. 692.
Relacionado con lo anterior, cabe señalar que, excepto aquellos casos extraordinarios en que así lo disponga el tribunal, la Regla 51.8(d) de Procedimiento Civil, supra, exige que el licitador agraciado entregue el importe total de su oferta “en el acto mismo de la adjudicación en mo-neda de curso legal o cheque de gerente o letra bancaria con similar garantía”. Banco Gub. de Fomento v. Abarca Warehouses, 109 D.P.R. 132, 135 (1979). Este requisito for-zosamente afecta la disponibilidad de licitadores conforme aumenta el precio de la propiedad. Ello obedece a que es preciso contar con un cierto grado de solvencia económica para disponer de altas sumas de dinero en efectivo o su equivalente al momento de participar en la subasta.
Igualmente, como parte del proceso, se debe contabilizar las cargas que afectan la propiedad a ejecutarse. Así, por ejemplo, las contribuciones y las hipotecas por las cuales el adquirente está obligado a responder son factores relevan-tes al calcular la razonabilidad del costo del inmueble. Figueroa v. Banco de San Juan, supra; Salas v. Cabassa, 69 D.P.R. 457 (1948).
Al examinar la situación particular de autos advertimos que, a pesar de que la parte recurrida abonó únicamente *515 $50,000 de la sentencia a su favor en la subasta, no por ello podemos inferir que dicha cantidad es exageradamente inadecuada.(6) Debe tomarse en cuenta que los recurridos se vieron forzados a asumir dos hipotecas que afectaban el inmueble, ascendentes a 245,000.(7)
B. Enriquecimiento injusto
No obstante, entendemos que, en casos como este, en los que se le adjudica una propiedad a un acreedor por sentencia, permitirle a éste descontar de su acreencia únicamente la cantidad que abonó para adquirir dicho inmueble mediante subasta, independientemente de su valor, podría conllevar el enriquecimiento injusto del acreedor a costa del deudor.
La utilización de la doctrina de enriquecimiento injusto no se encuentra restringida a la esfera contractual. “Es ésta una doctrina o principio general de derecho que puede aplicarse a situaciones muy distintas entre sí, siempre y cuando tengan en común un elemento: el que de no aplicarse se perpetraría la inequidad de que alguien se enriqueciese injustamente en perjuicio de otro”. Silva v. Comisión Industrial, 91 D.P.R. 891, 897-898 (1965). Esta norma está cimentada en criterios de equidad, es decir, justicia que permea a todo nuestro ordenamiento jurídico. Mun. Quebradillas v. Corp. Salud Lares, 180 D.P.R. 1003, 1019 (2011).
“Recurrimos a esta figura cuando da ley no ha previsto una situación en la que se produce un desplazamiento patrimonial que no encuentra una explicación ra- *516 zonable en el ordenamiento vigente’ Mun. Quebradillas v. Corp. Salud Lares, supra, pág. 1019. Véase Ortiz Andújar v. E.L.A., 122 D.P.R. 817 (1988). Con el propósito de hacer viable su utilización, hemos adoptado los criterios siguientes:
1. Existencia de un enriquecimiento.
2. Empobrecimiento correlativo.
3. Conexión entre el empobrecimiento y el enriquecimiento.
4. Falta de causa que justifique el enriquecimiento.
5. Inexistencia de un precepto legal que excluya la apli-cación del enriquecimiento sin causa. Mun. Quebradillas v. Corp. Salud Lares, supra, págs. 1019-1020; Ortiz Andújar v. E.L.A., supra, pág. 823.
Una vez examinados los hechos presentes en este re-curso, concluimos que se cumplen todos los factores perti-nentes para la aplicación de la mencionada pauta doctrinal. Primeramente, al adjudicarse la propiedad a la parte recurrida por $50,000, ésta obtuvo un aumento en su patrimonio. Luego, cuando la propiedad se desplazó del pa-trimonio de la parte peticionaria se produjo su correlativo empobrecimiento. Existe, a su vez, la conexión requerida entre el desprendimiento del uno y el aprovechamiento del otro. Así pues, se observan los próximos dos requisitos.
La cuarta condición también se satisfizo. Según estable-cimos en Ortiz Andújar v. E.L.A., supra, pág. 829, el “tér-mino ‘causa’ no tiene aquí la acepción que se le da en ma-teria contractual, sino que toma en el significado de acto jurídico que explica, que justifica la adquisición de un valor”.
En otras palabras, el beneficio o incremento en el patri-monio debe estar asentado en algún principio de derecho. Según hemos señalado:
Desde prismas diversos, el concepto de causa del enriqueci-miento ha sido objeto de serios debates entre juristas. No obs- *517 tante, la doctrina mayoritaria en este momento se inclina a reconocer situaciones en las que no se puede aplicar la acción de enriquecimiento injusto debido a que la atribución patrimonial posee una causa válida. Entre las mismas se señalan: cuando existe un convenio legal o un testamento y cuando se ejercita un derecho sin abuso. (Escolio omitido). Ortiz Andújar v. E.L.A., supra, págs. 829-830.
En este caso, los recurridos obtuvieron la ventaja econó-mica que representa el verdadero valor o equity de la pro-piedad adquirida. De acuerdo con las circunstancias en que se concretó la adquisición, no podemos concluir que existía causa alguna que validara la ganancia correspondiente al equity del inmueble en detrimento de los peticionarios. Por consiguiente, se cumple la cuarta condición.
En lo que respecta el quinto y último requisito, no ye-rnos nada en la Regla 51.8 de Procedimiento Civil, supra, que excluya la aplicación de la doctrina de enriquecimiento sin causa a la ejecución de una propiedad para el cobro de una deuda. De esta forma, concluimos que están presentes en este caso los elementos del enriquecimiento injusto.
Los recurridos obtuvieron la propiedad ejecutada por $50,000, una cantidad muy inferior al valor de tasación, y la vendieron en menos de dos años por $392,000. Negarnos a utilizar el precepto doctrinal que repudia el enriqueci-miento injusto en casos como el presente, facultaría a los acreedores a continuar cobrando del deudor aun luego de haber obtenido bienes a través del procedimiento de ejecu-ción cuyo valor excede la deuda por sentencia. Ello equi-vale a condonar el que se perpetúe una deuda independien-temente del lucro obtenido por el acreedor. No hay fundamento alguno que obligue a este resultado, en especial cuando al así hacerlo se trastocan nociones básicas de justicia.
De otra parte, el permitir que se abone el valor real de la propiedad al crédito por sentencia no perjudica al acree-dor en sus derechos pues, a través del inmueble, tiene a su *518 haber el equivalente del dinero adeudado y su capital se ve acrecentado correlativamente.
Contrario a la posición asumida por la disidencia, no vemos razón de peso para excluir a un deudor de las mercedes de una doctrina en equidad como lo es el enriquecimiento injusto. El cobro de una deuda no debe ser base para que una de las partes saque provecho de la otra. Realmente, lo que se pretende es que el acreedor cobre su acreencia y lo que en justicia le corresponde; no que se enriquezca a cuenta del deudor ejecutándole propiedades consecutivamente y escogiendo cuánto amortizar de su crédito por cada una sin contabilizar el efecto de su valor neto en la deuda.
No podemos pasar por alto que en este caso en particular, asumiendo que las cargas hipotecarias ascendían a $245,000, a través de un crédito de su sentencia por la cantidad de $50,000, los recurridos se hicieron de una pro-piedad cuyo valor oscilaba entre $475,000 —según la tasa-ción efectuada dos años antes de la subasta— y $392,000, que fue el precio de venta de dicha propiedad a un tercero posterior a la ejecución mediante subasta.
Habida cuenta de que la residencia de los peticionarios contaba con un valor residual al momento en que pasó a ser parte del patrimonio de los recurridos, como cuestión de equidad, corresponde restarle ese valor al balance adeu-dado por sentencia. En este particular, fue acertada la apreciación del tribunal primario al ordenarle a las partes evidenciar el equity de la propiedad ejecutada para luego llevar a cabo los cómputos correspondientes.
Acorde con lo anterior, como primer paso a determinar el valor neto del inmueble en este caso, es necesario dedu-cir el monto de las cargas hipotecarias del precio de la pro-piedad para la fecha de la subasta. De otra parte, debe tomarse en consideración también que la deuda quedó, a *519 su vez, reducida por los $50,000 que los recurridos ofrecie-ron en la subasta.(8)
Al no contar con los elementos de juicio sobre estos par-ticulares, es función del tribunal de instancia acumular toda la prueba necesaria para hacer la evaluación de los factores relevantes y determinar el crédito que corres-ponda.
Advertimos que nada de lo aquí dispuesto afecta los ca-sos en que un tercero, ajeno a la deuda que se procura cobrar, es quien resulta ser el licitador agraciado en la su-basta puesto que, según esta premisa, el acreedor por sen-tencia únicamente recibirá la cantidad pagada por la pro-piedad ejecutada. Así pues, no vemos razón alguna para que nuestra decisión cree incertidumbre entre los licitado-res, según intima la opinión disidente, puesto que en nada se afectan los derechos de esos terceros por lo dictaminado en hoy. En esta ocasión se atiende exclusivamente la rela-ción entre acreedor y deudor por sentencia.
Aclaramos igualmente que, en cuanto a la norma pautada hoy, nada tiene que ver el que la propiedad adjudicada al acreedor por sentencia aumente o disminuya de valor luego de la fecha de la subasta. Según explicamos anteriormente, lo determinante para efectos de fijar el monto del crédito a abonarse a la deuda existente es el valor residual de la propiedad cuando ésta pasa a ser parte del patrimonio del acreedor. Cualquier cambio en valor posterior a la subasta es impertinente a esta ecuación y corre por suerte del acreedor agraciado en la subasta.
Hemos reconocido que, dadas las limitaciones al método de pago y las circunstancias en que se produce la *520 venta, el precio en el trámite de una subasta no puede equipararse con el precio de una compraventa en el mer-cado libre, donde hay disponible un financiamiento a aque-llos compradores interesados. Figueroa v. Banco de San Juan, supra. Partiendo de esa premisa, surge la posibili-dad real de que en ejecuciones a favor de un acreedor por sentencia la propiedad cuente con un valor neto que exceda el precio de subasta. En estos casos, como bien dictaminó el foro de instancia en su Resolución objeto de la Sentencia del Tribunal de Apelaciones aquí recurrida, a menos que las partes lo estipulen, corresponde al deudor que esté en desacuerdo con lo ofrecido por el acreedor por sentencia en la subasta probarle al tribunal, en un trámite posterior, el valor en el mercado de la propiedad a la fecha de la subasta. Este trámite se limita únicamente a establecer el monto a acreditarse a la deuda en aquellas situaciones en que surja disputa al respecto. No concierne este proceso a las funciones del alguacil ni vulnera el curso normal de subasta.
Advertimos igualmente que nuestra decisión en nada afecta las disposiciones de la nueva Ley de Protección del Hogar, Ley Núm. 195-2011 (31 L.P.R.A. sec. 1858 et seq.) (Ley Núm. 195-2011), que protegen de embargo y ejecución aquellas propiedades que cualifiquen como hogar seguro conforme dispone la ley citada por la opinión disidente.(9)
Primeramente, este nuevo esquema legal no aplica a los hechos de este caso porque éstos preceden a su aprobación.(10) De otra parte, la aludida legislación tam-poco dispone de la problemática hoy presentada para nues-tra consideración. Resulta claro que su protección no se *521 extiende a otras propiedades del deudor que no constitu-yan su “residencia principal”. Quiere esto decir que, según el escenario propuesto por la disidencia, cualquier otro bien del deudor por sentencia, como podría serlo, por ejem-plo, una segunda propiedad, un predio de terreno sin una “estructura enclavada en el mismo” (31 L.P.R.A. sec. 1858), o cualquier otro inmueble que no cualifique al amparo de la Ley de Protección del Hogar como “residencia principal”, id., quedaría expuesto a ejecución por su acreedor mera-mente por la cantidad licitada, sin ninguna oportunidad de reajuste en la acreencia por el monto de su valor neto.
Entendemos que los principios básicos de justicia y la ausencia de legislación pertinente que la atienda exigen nuestra intervención en una situación como ésta, que re-sulta en el enriquecimiento injusto de una parte sobre la otra. De ninguna manera se le niega a un acreedor lo que por derecho le corresponde. No obstante, nos toca velar por los derechos de todos, incluyendo la parte deudora en esta instancia.
IV
Por todo lo antes expuesto, se expide el auto de “certio-rari” solicitado, se revoca la Sentencia emitida por el Tribunal de Apelaciones el 13 de mayo de 2008 y se reinstala, en su lugar, el dictamen del Tribunal de Primera Instancia de 6 de febrero de 2008.

Se dictará Sentencia de conformidad.

El Juez Presidente Señor Hernández Denton disintió con una opinión escrita, a la cual se unieron la Juez Aso-ciada Señora Rodríguez Rodríguez, el Juez Asociado Señor Martínez Torres y el Juez Asociado Señor Estrella Martínez.

 Los recurridos vendieron la propiedad adquirida mediante subasta en $392,000.

 Las ya derogadas Reglas de Procedimiento Civil de 1979 aplican a los hechos en este recurso.

 Las disposiciones aplicables al proceso aparecen detalladas en el Artículo 201 de la Ley Hipotecaria y del Registro de la Propiedad (Ley Hipotecaria), 30 L.P.R.A. sec. 2701.

 El Artículo 179 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2575, establece lo siguiente:
“Para que pueda tramitarse la ejecución y cobro de un crédito hipotecario, con arreglo al procedimiento sumario o bien con arreglo al procedimiento ordinario, será indispensable que en la escritura de constitución de la hipoteca se determine el *511 precio en que los interesados tasen la finca o derecho real hipotecado, para que sirva de tipo en la primera subasta que se deba celebrar.
“Para la segunda y tercera subastáis] regirán los tipos señalados en la see. 2721 de este título”.

 Este artículo dispone, en lo pertinente, lo siguiente:
“Servirá de tipo para la subasta en este procedimiento el precio en que hayan tasado la finca los contratantes en la escritura de constitución de hipoteca y no se admitirá oferta alguna inferior a dicho tipo. Si no produjere remate ni adjudicación la primera subasta, en la segunda que se celebrare servirá de tipo las dos terceras 2/3 partes del precio pactado. Si tampoco hubiere remate ni adjudicación en la se-gunda subasta, regirá como tipo de la tercera subasta la mitad del precio pactado”.

 Aunque la tasación del 2003, es decir, dos años previos a la subasta, valoró la residencia en $475,000, los recurridos la vendieron posteriormente a un tercero en $392,000.

 Las partes no especificaron para récord el balance de dichos gravámenes al momento de la ejecución. Únicamente informaron al tribunal de instancia que la primera hipoteca era de $150,000 y que la segunda era de $95,000. Por lo tanto, para efectos de esta Opinión, tomamos estas cantidades como ciertas.

 Nos vemos imposibilitados de realizar los cálculos pertinentes para determi-nar el balance exacto de la deuda por sentencia una vez se ejecutó el inmueble. No consta en autos ni el valor de la propiedad para ese entonces ni las cantidades específicas adeudadas en virtud de las hipotecas que la gravaban, ambos componen-tes esenciales para la correspondiente ecuación matemática.

 Según la ley mencionada, excepto en las situaciones allí expresamente con-signadas, le está vedado a cualquier acreedor satisfacer su deuda mediante la venta de una propiedad acreditada al amparo de dicho estatuto.

 Conforme dispone en su Artículo 17, la Ley Núm. 195-2011 (31 L.P.R.A. sec. 1858 et seq.) comenzó a regir inmediatamente después de su aprobación, es decir, el 13 de septiembre de 2011 y su aplicación es prospectiva.